**Eileen KENNEDY, etc. et al., Plaintiffs,**

v.

**Louis J. NICASTRO et al., Defendants.**

**No. 80 C 2820.**

United States District Court,
N. D. Illinois, E. D.

Dec. 16, 1980.

Abraham N. Goldman, Chicago, Ill., for plaintiffs.

Reuben L. Hedlund, Barbara F. Altman, Hedlund, Hunter & Lynch, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs Eileen Kennedy and Frank Murphy [1] filed this action as a claimed class action on behalf of the stockholders of Xcor

---

1. Kennedy was the only original plaintiff. Murphy's presence, added by the Amended Complaint, has cured some of the defects addressed by defendants' motions to dismiss the original Complaint (because plaintiffs filed the Amended Complaint before the motions were fully briefed, the Court never had occasion to rule on them).

International, Inc. ("Xcor")[2] and as a claimed derivative action on behalf of Xcor.[3] Defendants include Xcor, Seeburg,[4] Consolidated Entertainment, Inc.,[5] Xcor's officers, directors, attorneys and accountants and principal lender, and another alleged controlling person of Xcor, Gulf & Western Industries, Inc.

Various of the defendants have filed motions to dismiss the Amended Complaint, incorporating by reference substantial parts of their memoranda in support of like motions addressed to the original Complaint. There are a number of other pending motions in various stages of briefing, but because of the dispositive character of the motions to dismiss judicial economy dictates treating with such motions first.[6] For the reasons stated in this memorandum opinion and order, the Amended Complaint is dismissed.

### *Plaintiffs' Amended Complaint*

■ Because the Amended Complaint includes a melange of allegations with an indiscriminate shotgun invocation of virtually every operative section under the federal securities laws,[7] the Court will not review the allegations in any detail at the outset. Instead it will follow the approach

2. Xcor's prior corporate name was Seeburg Industries, Inc. Because the Seeburg name is relevant in other contexts (for example, certain Xcor assets were sold in a transaction of which plaintiffs complain, the acquiring corporation being named The Seeburg Corporation ["Seeburg"]), to avoid confusion this opinion will use "Xcor" whenever referring to the corporation now bearing the Xcor name.

3. This opinion will deal with each of the derivative claims to demonstrate that they are all flawed from the *substantive* point of view. It will therefore not be necessary to treat with their defects under Fed.R.Civ.P. 23.1, although plaintiffs' failure to have served a proper demand on the Xcor Board of Directors is an equally dispositive basis for dismissing the derivative claims.

4. Significantly, plaintiffs filed a stipulation in the Bankruptcy Court having jurisdiction over Seeburg's bankruptcy proceedings that plaintiffs would seek *no* relief against Seeburg in this action.

5. Seeburg is a wholly-owned subsidiary of Consolidated, which is in turn owned by de-

suggested by defendants' motions of reviewing the applicability of each of the statutes in turn, referring to the allegations of the Amended Complaint (cited "AC–") where necessary for that purpose.

In principal part the Amended Complaint's allegations revolve around the financial problems of a portion of Xcor's operations, its Seeburg Products Division (the "Products Division," comprising what AC 28 refers to as "three profitable operations, The Seeburg Music Library, Inc., Seeburg Security Systems, Inc., and post–mix vending machine operations, and the extremely unprofitable juke–box operations"). AC 29 charged that defendants caused Xcor to sell the Products Division to Nicastro and members of his family, who formed Seeburg to carry on the operation and to lease from Xcor the plant, machinery and equipment used by the Products Division. That sale transaction was for $250,000 in cash, a $750,000 7½ percent note, and preferred stock of Seeburg. AC 30 charges:

> No independent review or evaluation of the sale of the Products Division to Nicastro and Seeburg was performed, and said sale was never presented to Xcor's shareholders for a vote. Similarly, no

fendant Louis J. Nicastro ("Nicastro") and members of his family, including his son Stephen (also named as a defendant). Nicastro is a major stockholder of Xcor and Chairman of its Board.

6. This opinion does not address the individual motion filed by the accounting defendants, full briefing on which was deferred pending this decision. If plaintiffs intend to pursue their claim, they are ordered to file a responsive memorandum on or before December 30, 1980, with defendants' reply due January 12, 1981.

7. Plaintiffs' casual approach to pleading niceties and the admixture of claimed class and derivative claims have made it difficult for both defendants and this Court to identify with any certainty the context in which plaintiffs seek to invoke various sections of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act"). For this reason, much of the extended briefing of the parties (aggregating well over 200 pages) has been at cross–purposes.

independent appraisal of the "market value" of the Seeburg note and preferred stock was made.

### Section 11 of the 1933 Act

Section 11 of the 1933 Act of course relates only to *newly*–issued securities, which are admittedly not involved in this action. Having thrown a Section 11 claim in as part of the original Complaint's kitchen sink, and despite defendants' disclosure of the total inapplicability of that section in their brief, plaintiffs retained the allegations in the Amended Complaint. This necessitated *another* briefing by defendants, following which plaintiffs referred to inclusion of Section 11 as "purely a typographical error."

### Section 12(2) of the 1933 Act

Section 12(2) of the 1933 Act creates liability of a *seller* of a security to its *direct purchaser* where the disclosure requirements of the Act have not been complied with (that is, there has been a misstatement or omission of a material fact by written or oral communication). Once again the original Complaint did not make plaintiffs' contention clear. It purported primarily to relate to the sale to *plaintiff Kennedy* of her *Xcor* securities, a transaction that clearly lacked the privity with defendants required by the cases. Only after defendants' extended briefing of that issue did it emerge in AC 79 that the Section 12(2) claim was solely derivative in nature on behalf of Xcor, the complained–of sale involving the securities delivered by Seeburg to Xcor in Seeburg's purchase of the Products Division. But the short answer to that claim is that plaintiffs stipulated on June 30, 1980 that they would seek no relief against Seeburg, which was the *seller* of the securities. As for the other defendants, plaintiffs assert that "The concept of seller in this context goes well beyond the person who actually sold the security to plaintiff"– but they cite no case authority to support

the notion that the privity requirement (see *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir. 1980); *McFarland v. Memorex Corp.*, 493 F.Supp. 631 (N.D.Cal.1980)) has been satisfied.[8]

### Section 18 of the 1934 Act

Liability under Section 18 of the 1934 Act requires (1) defendants' false or misleading SEC filings (not known to be such by a plaintiff) that (2) plaintiff has read and relied upon in purchasing securities. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Here too AC 79 makes it plain that the only such claim is asserted as a *derivative* claim on behalf of *Xcor*. Xcor's only "purchase" of securities was that of the Seeburg stock. *Seeburg* of course engaged in no SEC filings at all.

In a bizarre way plaintiffs argue that Xcor read and relied on *its own allegedly misleading SEC filings* in purchasing the Seeburg stock, without Xcor *knowing* that the statements were false (Pl.Br.20):

> Xcor itself can be seen as having read and relied upon the many false documents filed with the SEC.... For the reasons stated in the immediately preceding section, knowledge of the falsity cannot be imputed to Xcor, and the Sec. 18 claim must stand.

It is difficult to characterize the absurdity of that position, except to state that it is untenable and supported neither by the language of Section 18 nor by any authority.

### Section 14(a) of the 1934 Act

Section 14(a) of the 1934 Act and its related Rule 14a–9 deal with proxy solicitation violations. Here plaintiffs purport to ground a derivative action on behalf of Xcor (AC 79) and a class action against all defendants except Seeburg, the accounting defendants and Chase Manhattan (AC 71).

---

**8.** There is moreover no allegation of the "written or oral communication" pursuant to which the Seeburg securities were acquired by Xcor. If that and other requisite substantive ingredients of a cause of action were to be supplied, the Court would of course be receptive to a proper showing that the purchaser–seller requirement had been satisfied as to defendants other than Seeburg as "sellers."

As for the first of these claims, it suffers from the same vice discussed in the preceding section. There was no proxy solicited from *Xcor* in connection with any of its transactions. Indeed plaintiffs' own memorandum does not even refer to the inclusion of a Section 14 charge in the Fourth Claim (the derivative claim). Apparently this must have been another of plaintiffs' "typographical errors."

Plaintiffs' proxy solicitation class action claim involves a different, but equally fatal, defect. Even if (as is necessary in a Fed.R. Civ.P. 12(b)(6) motion) the well–pleaded Amended Complaint allegations are accepted as true, Section 14 liability requires that the false or misleading proxy statement had been related to a solicitation for an identifiable transaction. *Cohen v. Ayers*, 596 F.2d 733 (7th Cir. 1979); *Mills v. Electric Autolight Corp.*, 552 F.2d 1239 (7th Cir. 1976), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977). But the Amended Complaint fails to identify the *transaction* for which plaintiffs' votes were allegedly solicited by the use of the allegedly false proxies. Plaintiffs claim only that the stockholder class was "defrauded" (AC 71), causing millions of dollars in alleged financial injury (AC 73), and "deprived . . . of . . . valuable rights of informed corporate suffrage" (*id.*). Such generalized allegations do not suffice. Election of directors cannot be challenged under Section 14(a) on such grounds. See for example *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 654 (2d Cir. 1979), contrasting the situation presented here.

### Section 16(b) of the 1934 Act

In light of the preceding discussion, it is difficult to perceive plaintiffs as having outdone themselves in the assertion of groundless claims. That characterization, however, fits their Section 16(b) insider profits derivative claim (AC 82–83). It refers to no transactions by Xcor's officers, directors or stockholders, is stated on information and belief and purports to cover "all six–month periods since 1974." Given the requirement of mandatory public filings un-der Section 16(a), the absence of any claim of defendants' non–compliance with those requirements and plaintiffs' total failure to allege compliance with the condition precedent of a request to prosecute Section 16(b) claims, no valid claim under that Section has been stated in the Amended Complaint.

### Section 12 of the 1934 Act

Plaintiffs persist, at AC 1, in including Section 12 of the 1934 Act as an alleged ground of jurisdiction (and two sentences of their 54–page brief purport to support that "ground"), even though there is no allegation anywhere in plaintiffs' four numbered "claims" that refers in any respect to Section 12. Suffice it to say that Section 12 relates only to the *registration* and *reporting* of securities under the 1934 Act, that there are no allegations whatever as to non–compliance by any defendant with the statutory requirements and that current case law denies the implication of a private remedy under that Section. See *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Investors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) sharply restricting the implication of private actions under the federal securities laws.

### Sections 10(b) of the 1934 Act and 17 of the 1933 Act

Once more the Amended Complaint purports to state both a derivative claim (AC 79) and class action claims (AC 52 and 67) under the general "securities fraud" sections of the 1933 and 1934 Acts. As for any derivative claim on behalf of Xcor, plaintiffs' brief makes no argument whatever in support of such a possible claim–it deals only at great length with the sales of *Xcor's* stock. It thus appears likely that we have still another typographically erroneous inclusion of a claim.

Plaintiffs' class claims are more serious business. At least they are the only claims in the entire prolix Amended Complaint that merit any substantial discussion, unlike the patently baseless (and in several in-

stances really frivolous) claims already discussed.

This Court has labored at length over the "securities fraud" class action allegations of the Amended Complaint in an effort to isolate the few that successfully surmount even the low threshold of *Conley v. Gibson*, 355 U.S. 41, 45–46, 47, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957). Frankly, however, that is a job for the pleader and not for the Court, particularly where a discursive pleading like the Amended Complaint shows the kinds of deficiencies already discussed and other major defects as well. Accordingly this Court will simply discuss briefly the relevant operative principles, strike the Amended Complaint and send plaintiffs back to the drawing board to present a complaint that will not be an imposition on the Court and that defendants may plead to intelligently.

It should be understood that the Court is *not* holding that plaintiffs do not have a cause of action for securities fraud. This action is certainly not in the posture to determine whether a properly framed complaint, based on material misstatements or omissions in connection with plaintiffs' purchases of Xcor stock, can be stated and upheld. But it is essential that in their reframing of a complaint, plaintiffs proceed in light of the following discussion.

1. *Standing.*

For a plaintiff to qualify as a class representative, the plaintiff himself or herself must state a good individual cause of action. This requirement has several facets:

    (1) It bears on the need for a plaintiff to assert his or her own claim, not that of others, as a "case or controversy matter" under Article III of the Constitution.

    (2) It is mandated by the "typicality" requirement under Fed.R.Civ.P. 23.

From the viewpoint of plaintiffs' standing in either sense, it should be noted that plaintiff Murphy purchased 200 shares of Xcor in 1974 and 1975, while plaintiff Kennedy (a) purchased 50 shares of Xcor in 1975 and sold that stock in 1978 and (b) purchased 10 Xcor shares in September 1979. Accordingly Murphy cannot complain of any of the alleged misconduct of defendants that purportedly caused the value of Xcor's stock to be inflated after 1975, the last date on which he was a purchaser. And because on her own allegations there was a continued overstatement of Xcor's financial position at least through the time she sold her initial block of stock, thus appearing to negate any damage flowing from her earlier purchase, Kennedy's complaint must be limited to factors in existence as of the time of her September 1979 purchase.[9]

2. *Particularity.*

Where as here a complaint sounds essentially in fraud, it is necessary to reconcile the notice pleading concept of Fed.R.Civ.P. 8(a) with the particularity requirement of Fed.R.Civ.P. 9(b). More rigorous standards are imposed in Rule 10b–5 cases for good reason. *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir. 1980); *Ross v. A. H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979). Plaintiffs will be required on repleading to identify the specific misleading statements and omissions of which they complain, and to satisfy the scienter requirements of such cases as *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

3. *Specificity of Documents.*

As a particularized aspect of the need for particularity, and especially in view of the disclosures reflected in Xcor's public filings, plaintiffs must identify the specific documents that are involved in the alleged misleading statements (and as to those, must identify the statements themselves) and in the alleged omissions. It is not enough to refer broadside to "various documents" and "public filings." *Ross v. A. H. Robins Co.,*

9. Even were that not the case, Kennedy would be limited to complaining of misstatements or omissions in existence when she made her 1975 purchase (the same matters of which Murphy can complain) and of misstatements or omissions extant in September 1979, but not of matters in between.

607 F.2d at 557–58; *Harris v. Emerson,* CCH Fed.Sec.L.Rep. ¶ 97,196 (S.D.N.Y. 1979).

### 4. *Reliance.*

To the extent that suit is based on material misstatements, plaintiffs must show *reliance*–that is, must satisfy the statutory requirement that the alleged statements have been made "in connection with the purchase or sale of any security" by plaintiffs. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Wright v. Heizer Corp.,* 560 F.2d 236, 249 (7th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). This in turn narrows the proper focus of the complaint to plaintiffs' own purchases of Xcor stock, and the claimed misstatements extant at the time of those purchases. As for claimed material *omissions, Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), teaches that "positive proof of reliance is not a prerequisite to recovery." Nonetheless, because *Affiliated Ute* still requires "that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision," once again plaintiffs are limited to material omissions existing at the time of their respective purchases of Xcor stock.

### 5. *Mismanagement.*

Plaintiffs' principal reliance in this action, and their extended pejorative characterization of defendants, is based on alleged fraud, self–dealing and mismanagement by various of the defendants. For example, Paragraphs 28 through 34 of the Amended Complaint do not deal at all with a *securities* claim by plaintiffs in the Rule 10b–5 sense defined by *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), or by such subsequent cases as *Gluck v. Agemian,* 495 F.Supp.

1209 (S.D.N.Y.1980).[10] Plaintiffs must recognize, and must limit their complaint in accordance with the recognition, that a federal securities claim under 1934 Act § 10(b) and Rule 10b–5 and 1933 Act § 17 must deal with fraud (in the securities sense) *in the sale of securities to plaintiffs.* On that score, Paragraph 47 of the Amended Complaint, to take another example, also reflects the kind of muddied misperception that has pervaded plaintiffs' pleadings to this point.

### *Gulf & Western Industries, Inc.*

■ Plaintiffs' allegations (or more accurately lack of allegations) against Gulf & Western require that the action be dismissed as to that defendant. Paragraph 15 of the Amended Complaint alleges that Gulf & Western "has been a controlling person of the defendant Xcor throughout the relevant period." No other allegations refer in terms to Gulf & Western, although (1) a large number of references are made to "defendants" throughout the Amended Complaint without specifying just which defendant committed what act and (2) judging from plaintiffs' headings in the Amended Complaint, several of its claims are apparently asserted against many defendants, including Gulf & Western.

However, "controlling person" liability cannot be predicated, as defendants have sought to do here, solely on ownership of Xcor stock. *Sanders v. John Nuveen & Co.,* 524 F.2d 1064, 1072 (7th Cir. 1975), vacated on other grounds, 425 U.S. 929, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976); *Christoffel v. E. F. Hutton & Co.,* 588 F.2d 665, 668–69 (9th Cir. 1978) and cases therein cited. Absent any allegation of "culpable participation" in the alleged wrongdoing, the Amended Complaint cannot stand against Gulf & Western. *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 649 (N.D.Cal.1980).

**10.** It should be emphasized that by singling out these paragraphs the Court does *not* imply that the balance of the Amended Complaint is adequate under the principles already expressed in this opinion. Nor for that matter does the Court imply the adequacy of any other allegations of the Amended Complaint that do not rely upon disclosure or non–disclosure in the context of plaintiffs' purchases of Xcor stock.

Because plaintiffs will be required to re-plead, it is appropriate to comment on an aspect of plaintiffs' pleading to date that is epitomized by the Gulf & Western situation but must be cured as to all defendants in the Second Amended Complaint: the practice of alleging indiscriminately that "defendants" performed or omitted to perform some act. There may indeed be some specific matters as to which it is appropriate to refer to some defendants in a collective sense ("defendant directors" is an obvious example). There may even be individual items as to which *each* of the defendants was involved in claimed wrongdoing. But plaintiffs owe defendants the obligation to make a good faith differentiation throughout the complaint that will enable each defendant to know with what he or it is charged and to what he or it must make answer.

### Conclusion

Plaintiffs' First Amended Complaint is dismissed, and plaintiffs are given leave to file a Second Amended Complaint complying with the provisions of this memorandum opinion and order on or before January 5, 1981. Given the enormous workload that plaintiffs have already imposed on opposing counsel and the Court, plaintiffs must recognize that a failure to generate a sound complaint limited to matters properly cognizable by this Court may be met with further motions by defendants for sanctions, to which this Court would be inclined to be more receptive than heretofore.