Eileen **KENNEDY**, et al., etc., Plaintiffs,

v.

Louis J. **NICASTRO**, et al., Defendants.

No. 80 C 2820.

United States District Court,
N. D. Illinois, E. D.

July 8, 1981.

---

Abraham N. Goldman, Steven Ackerman, Jeffrey Slemmons, Chicago, Ill., for plaintiffs.

Reuben L. Hedlund, Barbara F. Altman, Hedlund, Hunter & Lynch, Shalom L. Kohn, Sidley & Austin, Harold C. Hirshman, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., Arthur M. Handler, Manuel W. Gottlieb and Paul A. Batista, Golenbock and Barell, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs Eileen Kennedy and Frank Murphy filed this action as a claimed class action on behalf of the stockholders of Xcor International, Inc. ("Xcor") and as a claimed derivative action on behalf of Xcor. Defendants include Xcor, The Seeburg Corporation ("Seeburg"), Consolidated Entertainment, Inc. ("Consolidated"), Xcor's officers, directors, attorneys and accountants and a principal lender, and another alleged controlling person of Xcor, Gulf & Western Industries, Inc. ("G & W").

This Court's December 16, 1980 memorandum opinion and order (the "Opinion") dismissed plaintiffs' First Amended Complaint with leave to replead along the guidelines established in the Opinion, 503 F.Supp. 1116. Plaintiffs have now submitted their Second Amended Complaint (the "Complaint") stating six separate claims, and all defendants have moved to dismiss the Complaint. For the reasons stated in this memorandum opinion and order defendants' motions are granted except for the Complaint's sixth claim.

## First Claim

■ In their first claim plaintiffs assert a class action by Xcor's shareholders for violations of Section 17 of the 1933 Act, 15 U.S.C. § 77q, and Rule 10b–5 arising from plaintiffs' purchase of their Xcor stock.[1] Plaintiffs' first two attempts to plead that claim were deficient in failing to allege any reliance by the plaintiffs on the documents containing the alleged misrepresentations and omissions. Plaintiffs now concede that they did not rely on or even read any of the documents generated by defendants containing the alleged misrepresentations and omissions. Rather they assert for the first time an entirely new basis for that claim: a "fraud on the market" theory.

Three Courts of Appeal have accepted such a theory of securities fraud: *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (en banc); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Ross v. A. H. Robins Co.*, 607 F.2d 545, 553 (2d Cir. 1979). Under that theory (*In re LTV Securities Litigation*, 88 F.R.D. 134, 142 (N.D.Tex.1980)):

> A plaintiff asserting fraud on the market need not allege individual reliance but only that the plaintiff relied upon the integrity of the market price of the security which was distorted by the impact of the particular misstatements (citations omitted). Reliance is *presumed* once it is shown that a misrepresentation is material, or, what is substantially identical given the concept of materiality—once it is established that the material misrepresentation affected the price of the stock traded on the open market.

Although our own Court of Appeals has yet to adopt or reject the fraud on the market theory, this Court need not resolve that question to decide this motion. Plaintiffs have failed to plead the necessary ingredients of that cause of action in any event.

In *Shores v. Sklar* the Fifth Circuit, with ten judges dissenting in an en banc opinion, most recently accepted only a limited version of the fraud on the market theory. It upheld such a Rule 10b–5 action only if the securities were proved entirely unmarketable—if the bonds involved could not even have been *offered for sale* on the market but for the fraudulent misrepresentation of defendants. As the Court went on to state:

> If he proves no more than that the bonds would have been offered at a lower price or a higher rate, rather than that they would never have been issued or marketed, he cannot recover.

Here Complaint ¶ 95 alleges that the material omissions and misstatements by defendants artificially inflated the price of Xcor's stock. There is no allegation that such securities would not have been marketable but for defendants' allegedly unlawful acts.[2] Thus under the limited version of the fraud on the market theory adopted by the Fifth Circuit in *Shores* plaintiffs would not have a cause of action.

However the Second and Ninth Circuits have adopted a broader version of the fraud on the market theory, under which a cause of action lies for any open market purchaser who alleges that defendants inflated the market price of a security. *Koenig v. Smith*, 88 F.R.D. 604, 607 (E.D.N.Y.1980). But even under that more expansive concept plaintiffs have failed to plead a crucial allegation. While plaintiffs allege that they purchased stock for an artificially inflated price they have failed to indicate what if any injury resulted. Complaint ¶ 95 states only that as a result of their acquisition of the Xcor securities "plaintiffs and the members of the class have been damaged by the defendants in an amount that is presently unknown to plaintiffs." But

---

1. In this as in a great many other areas of the Complaint, plaintiffs have proceeded with their redrafting as though the Opinion had never been written. Contrast the discussion of "Standing" at Opinion 10–11 with plaintiffs' renewal of their defective class allegations at Complaint ¶¶ 5, 6, 25 and 28.

2. Indeed any such allegation, if made, could scarcely stand in the face of subsequent developments. Today the claimed misrepresentations and omissions are known to the market. Xcor stock is alive and well and living in the market at a price far above plaintiffs' purchase prices.

simply purchasing securities at an inflated price does not by itself indicate that an injury has occurred. It is possible, for example, that the defendants' alleged misstatements and omissions have continued to inflate the price and thus might possibly result in a gain rather than a loss for plaintiffs. In the typical fraud on the market case a plaintiff purchases a security when misstatements and material omissions by defendants have artificially inflated its market price. Thereafter corrective statements are issued causing a rapid decline in the value of the securities.

While it may be possible in certain limited circumstances for a plaintiff to suffer a loss even where the price of the stock has continued to rise (see *In re LTV Securities Litigation*, 88 F.R.D. at 148–49), it is axiomatic that there must be some injury to plaintiff in order to state a cause of action under Rule 10b–5. Because plaintiffs have alleged unlawful actions on the part of defendants but no resulting injury their Rule 10b–5 claim must be dismissed.[3]

### Second Claim

■ Plaintiffs' second claim asserts another class action by Xcor's shareholders, this time against Xcor's auditors, Arthur Young & Company ("Arthur Young"), and one named partner of that firm, Harold Bach ("Bach"), based upon Section 16 of the 1933 Act, 15 U.S.C. § 77p, and Rule 10b–5. Arthur Young and Bach have moved to dismiss that claim under Fed.R.Civ.P. ("Rule") 9(b).

This Court need not examine the pleadings under Rule 9(b) to determine the viability of the second claim. It is insufficient for a reason clearly stated in the Opinion: It fails to allege that there has been any *reliance* by plaintiffs in connection with the purchase or sale of a security. As to mate-

rial misrepresentations, the law is clear that plaintiffs must allege reliance. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). As for claimed *omissions*, although *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) teaches that "positive proof of reliance is not a prerequisite to recovery," a plaintiff must at least demonstrate an awareness of the documents generated by defendants even if not specific reliance on a material omission. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 284 (7th Cir. 1981).

Here plaintiffs have failed to allege that they were in any way aware of the now-complained-of documents for which Arthur Young and Bach were responsible. Their second claim must be found wanting.[4]

### Third Claim

Plaintiffs' third claim is a derivative action on behalf of Xcor against all defendants except G & W for claimed violations of Section 12 of the 1933 Act, 15 U.S.C. § 77*l*. That claim purports to relate to the delivery by Seeburg to Xcor of Seeburg securities in exchange for the assets of the Xcor Products Division.

Section 12 creates liability of a *seller* of a security to its direct purchaser if certain disclosure requirements are violated. In the Opinion this Court dismissed plaintiffs' earlier Section 12 claim because as originally pleaded Seeburg was the seller of the securities. Because plaintiffs could seek no relief against Seeburg in this action, this Court found plaintiffs' Section 12 claim wholly deficient.

Plaintiffs have now sought to correct that flaw by alleging that Seeburg was a sham corporation established to give certain of the individual defendants the opportunity to sell worthless securities to Xcor in

---

3. This analysis should not be understood as embracing the broader version of the fraud on the market theory. Both the majority opinion and the strong dissent in *Shores v. Sklar* express powerful reasons for adhering to the established requirement of actual rather than presumed reliance as a predicate for Rule 10b–5 actions.

4. Insofar as the allegations of the second claim seek to rely on a fraud on the market theory of *presumed* reliance, they are deficient for the reasons discussed in the preceding section of this opinion.

exchange for the Products Division. Such an allegation might satisfy the privity requirement of Section 12.

■ But plaintiffs' Section 12 claim suffers from another fatal defect. Section 12 permits recovery in situations involving the use of "any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication. . . ." Here the Complaint refers to only one written communication, Louis Nicastro's Pledge and Guaranty of the sale of the Seeburg securities. Such a document does not on its face qualify as a prospectus to potential purchasers of a security. *See*, 15 U.S.C. § 77b(10). As to any oral statements, Complaint ¶ 140 states only the conclusion that "the TSC securities were fraudulently, knowingly and intentionally sold to Xcor by means and instruments of transportation in interstate commerce . . . and oral communications. . . ." Those conclusory allegations certainly do not satisfy the requirements of pleading a cause of action for fraud under Rule 9(b). Because plaintiffs have failed to point to any other specific fraudulent communications with respect to the sale of the Seeburg securities their Section 12 claim must fail.

### Fourth Claim

Plaintiffs' fourth claim is a derivative claim on behalf of Xcor against all defendants except G & W for violation of Section 17 of the 1933 Act and Rule 10b–5. But it is an understatement to say that the substance of that claim is difficult to decipher.[5]

Complaint ¶ 147 alleges that the defendants used the sale of the Products Division of Xcor as part of their continuing scheme to inflate Xcor's assets and income and therefore presumably inflate the price of Xcor's stock. It thus appears to be part of the fraud on the market theory and therefore deficient for the reasons discussed earlier.

Paragraphs 149–52 are more confusing in securities law terms. They allege in essence that the defendant directors of Xcor knew or should have known that the securities they received in exchange for the sale of the Products Division to the Seeburg Corporation were worthless. Such allegations patently *negate* a claim under Rule 10b–5, because rather than alleging the purchase of securities based on fraudulent misrepresentations and omissions, they charge that defendants were *aware* of the nature of the securities they were purchasing. While such allegations might constitute a claim for breach of fiduciary duty, they do not allege a violation of the securities laws.

■ Finally, Complaint ¶¶ 153–55 are mere boilerplate, alleging violations of the securities law in conclusory terms without indicating *any* factual support. Because the facts alleged in the prior paragraphs fail to allege (indeed contradict) any violation of the securities laws, plaintiffs' fourth claim must fail.

### Fifth Claim

■ Plaintiffs' fifth claim purports to be a double derivative claim on Xcor's behalf against Consolidated, Louis Nicastro and Steven Nicastro for violation of Sections 12 and 17 of the 1933 Act and Rule 10b–5. It is based on the 1979 sale of Seeburg pre-

---

**5.** Much the same comment could have been made in each prior section of this opinion. Apparently students of mythology, plaintiffs' counsel emulate the Hydra. In the Opinion this Court lopped off the heads of a 29-page 84-paragraph First Amended Complaint, seeking to provide a primer for plaintiffs' repleading in light of Rule 8's requirement of "a short and plain statement of the claims" and referring to "the enormous workload that plaintiffs have already imposed on opposing counsel and the Court. . . ." What has sprouted forth is a 69-page 172-paragraph Second Amended Complaint of enormous prolixity (indeed even those numbers are deceptively low, for a number of the paragraphs comprise multiple subparagraphs). Only curiosity as to the size of the *next* effort tempted the Court to permit pleading over. More seriously, it is a court's responsibility to sustain a pleading if, fairly read, it can state a claim. But what of counsel's responsibility to tender a pleading that is *capable* of being fairly read in the first place? Failure to do so is a disservice to clients and an imposition on the Court.

ferred stock by those defendants to Seeburg itself in return for at least $1 million in equipment and $1.4 million in cash.

To pursue a double derivative claim plaintiffs—Xcor stockholders—must demonstrate that Seeburg was a subsidiary of Xcor. 7A Wright & Miller, Federal Practice and Procedure § 1821. But Seeburg's voting or common stock is wholly owned by Consolidated not Xcor. Plaintiffs attempt to avoid the problem by pleading (Complaint ¶ 162) that "the pledge of TSC's common stock [by Consolidated to Xcor] was in default at least as early as May, 1979," so that Xcor was "equitable owner of all of TSC's common stock." But as plaintiffs themselves concede at page 19 of their reply memorandum, Xcor has yet to *foreclose* upon that pledge. Whatever the purpose or motivation behind Xcor's failure to foreclose that pledge, plaintiffs have failed to plead that Seeburg was an Xcor subsidiary because Consolidated still controls Seeburg's voting shares. Accordingly plaintiffs cannot maintain the double derivative action on behalf of Xcor.

### Sixth Claim

 Plaintiffs' sixth and last claim is a derivative action on Xcor's behalf against defendants Nicastro, Golenbock, Golenbock & Barell, McKenna, Reich and Weiner for alleged violations of their state common law fiduciary duty. Jurisdiction is asserted on both diversity and pendent grounds.

Diversity of citizenship is properly alleged in Complaint ¶ 167. As a pleading matter the Complaint asserts breaches of fiduciary obligations. But because retaining the sixth claim in its present form (realleging Complaint ¶¶ 1–164) would carry so much excess baggage, the *entire* Complaint will be dismissed with leave to plaintiffs to replead only the sixth claim.

### Conclusion

This opinion has dealt with plaintiffs' third attempt to frame an appropriate com-

plaint. Because plaintiffs have failed properly to plead claims under the securities law notwithstanding this Court's explicit instructions in the Opinion, the first five claims are dismissed with prejudice. *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978). Plaintiffs' sixth claim is dismissed without prejudice, with leave to plaintiffs to replead an appropriately condensed version on or before July 20, 1981. Defendants named in that repleading may then answer or otherwise plead thereto on or before August 10, 1981.[6]

---

**6.** Defendants' alternative motion to dismiss plaintiffs' action for failure to obey an order of this Court does not commend itself to the

Court. It will however be reserved for decision without rebriefing when the parties have joined issue on the repleaded sixth claim.