**Fred ZILKER, etc., Plaintiff,**

v.

**Sam W. KLEIN, et al., Defendants.**

**No. 77 C 1672.**

United States District Court,
N. D. Illinois, E. D.

June 2, 1982.

---

4. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Richard F. Watt, Russell Woody, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiff.

John C. Tucker, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nothing more remains of this case than determination and allowance of fees to counsel for plaintiff, but that bids fair to become a full-fledged dispute on its own. After this Court's March 16, 1982 hearing at which it confirmed the settlement of the litigation itself and expressed a number of substantial reservations as to the fees petition, plaintiff's counsel filed a supplemental application and accompanying memorandum, followed by a brief supplemental memorandum by defendants. Because plaintiff's counsel's perception continues to differ so materially from that of this Court, this opinion seems called for.

1. Advocacy is always pardonable in its occasional excesses—after all, we are trained as lawyers to be vigorous proponents of our positions. But the affidavit of one of plaintiff's counsel, Stanley Kaufman, Esq. of New York (a "speaking affidavit" in the classic New York style, impermissibly mixing argument and legal citation along with the only proper purpose of an affidavit: the statement of evidentiary facts

*This Court's Proper Role*

■ In their supplemental memorandum plaintiff's counsel suggest that this Court's scrutiny of the petition for $200,000 in attorneys' fees is somehow a substitution of its own judgment for that of the Bally directors. That is unsound both in fact and in law.

First, it is not accurate to imply that Bally's board *approved* a $200,000 fee. What they did as part of the settlement of the merits of the controversy was to agree that they would neither endorse nor oppose a fee petition that did not exceed that amount. They did so because of a business judgment that, taking "cost" in the broadest economic sense, continuing the litigation would be more costly to Bally than the proposed settlement (even considering the latter on a worst-case basis). But that was of course done with the knowledge that the entire proposed settlement, *including* the petition for fees, would be subject to this Court's approval after the Bally stockholders had their opportunity to comment on the settlement.[1]

Second, both Bally's directors and this Court have a responsibility, fiduciary in nature, to the Bally stockholders. Those stockholders have been represented in the litigation by plaintiff's counsel, and that representation has been vigorous and consistent with the other fiduciary relationship between lawyer and client. But when the question of fees arises the lawyer is at arms length with the client, who in *that* area is unrepresented. This Court would be delinquent in its responsibilities to Bally's stockholders if it did not give independent scrutiny to the propriety of fees.

Third, in response to this Court's April 16, 1981 opinion (the "Opinion," 510 F.Supp.

to which the affiant would be competent to testify) is simply wrong when it suggests that this Court's independent determination of the proper fee would "interfere with the exercise of that discretion" by the Bally board and that the board had made an "implicit determination" that a $200,000 fee would not be a waste of Bally's assets.

1070, 1073) Bally (albeit belatedly) appointed a subcommittee of independent directors to evaluate the litigation. Before that machinery was well under way the settlement was reached (anticipated cost of that procedure was part of the equation giving rise to Bally's decision to settle). But had the matter run its full course, Delaware law teaches that the trial court's obligation is to exercise *its own independent business judgment* in reviewing the committee's decision taken on behalf of the corporation. *Zapata v. Maldonado*, 430 A.2d 779, 787 (Del.Sup. Ct.1981). This Court can do no less here.

Fourth, plaintiff's counsel makes an entirely invalid distinction between the class action and the derivative suit in terms of this Court's function. All the needs for protection of the unrepresented—the same considerations already identified—have equal force in the two situations. All that distinguishes them is the presence of a board of directors to represent stockholder rights in the derivative action. In real world terms the potential for sweetheart deals[2] is the same in the two types of action. Essentially the argument brings into play the principles already discussed, in which the Court must protect the rights of those without counsel at this point in the litigation.

### Determination of the Allowable Fee

■ This opinion turns then to the $200,-000 question. It is apparent from the Opinion that plaintiff was no more than marginally successful in this litigation. All the wide-ranging claims of the Complaint save one were rejected. Those rejected claims were variously but fatally flawed.

As this Court stated from the bench during the March 16 hearing, this case is not at all parallel to those in which a partially successful plaintiff is entitled to the allowance of all fees because he has prevailed substantially and it would be inappropriate to carve out the time spent on unsuccessful theories. *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 162–65 (7th Cir. 1981); *Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir. 1980). Here the *only* successful claim was entirely discrete and a relatively minor part of the total litigation.[3]

Under those circumstances the teaching of our Court of Appeals is that a court should determine what services were allocable to the matter on which plaintiff was the "prevailing party." *Busche v. Burkee, supra; Muscare v. Quinn*, 614 F.2d 577, 580–81 (7th Cir. 1980); and see in general *Syvock, supra*. It is unnecessary to posit any reductio ad absurdum to illustrate the inappropriateness of allowing *all* fees under such circumstances. This case itself demonstrates the unfairness of requiring Bally to pay twice—once to its own successful counsel and once to the other side's unsuccessful counsel—for separable claims that have been rejected after an extended and expensive litigation process.[4]

Nor may plaintiff be viewed as the "prevailing party" on his claims (viewed as a totality) through settlement, which under such decisions as *Harrington v. DeVito*, 656 F.2d 264 (7th Cir. 1981) could justify the

2. No implication is of course intended that such is in fact the case here.

3. By contrast a number of the *unsuccessful* and major claims represented variant theories of liability and were therefore related to each other. Had plaintiff been successful on one or more but not all of those, the doctrine of the cases cited in the text might have come into play. *Busche v. Burkee*, 649 F.2d 509, 520–22 (7th Cir. 1981).

4. Plaintiff's counsel continue to attack the issues in a manner at cross-purposes with this Court's analysis. By a post-briefing letter they refer to the very recent Second Circuit decision in *Golden v. Garofalo*, Fed.Sec.L.Rep. (CCH) ¶ 98,656 (2d Cir. May 5, 1981), refusing to fol-

low our own Court of Appeals' decision in *Frederiksen v. Poloway*, 637 F.2d 1147 (7th Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), itself adhered to in *Canfield v. Rapp & Son, Inc.*, 654 F.2d 459 (7th Cir. 1981) and followed—as *Golden* acknowledged—"in a growing number of cases." But the fact remains that the Seventh Circuit (and the majority) view is that Bally's purchase of Bally Distributing Company's stock was the purchase of a *business* and not of a *security*, so that plaintiff could in no way be said to have been the "prevailing party" on the Rule 10b–5 claim. At most the claim was non-frivolous, and that is not enough for the reason next stated in the text.

allowance of all time spent by plaintiff's counsel. Any comparison of plaintiff's many unsuccessful with its one successful claim, viewed against the modest though not inconsequential benefits to Bally's stockholders derived from this litigation, must call to mind the familiar adage of the mountain in labor that brings forth a mouse.[5] This is not to depreciate the reasonableness of the ultimate settlement. But any objective observer has to regard defendants not plaintiff as the substantial victor both on the merits and in the settlement.

Accordingly plaintiff's counsel's argument that they are entitled to compensation for all time expended, including time on what was really a lawsuit they lost, is unsound. That is what this Court ruled orally at the March 16 hearing, and it is reaffirmed in this opinion.

In response to this Court's request for an appropriate allocation, counsel have filed affidavits and a memorandum estimating that the time necessitated by the successful claim (the "Klein claim") was 75–80% of the total. As a factual matter this Court does not credit that showing. It simply taxes credulity, and it is inconsistent with the matters known to the Court from its rulings in the litigation and from whatever objective facts (discovery, briefing and so on) are available.[6]

Even if it were true however that so much of the time was in fact devoted to the Klein claim, that would have been a totally uneconomic decision—one that would never have been made by counsel and a client were they exercising a free market judgment. That is in essence the concept of a reasonable fee: what time and expense would have been incurred in light of the nature of the Klein claim and the reasonably potential recovery. Under that standard, there is no way in which as much as some 850 hours of lawyer time and 150 hours of law clerk and paralegal time, aggregating at least $115,000,[7] could *reasonably* have been devoted to that claim.

This conclusion poses three possible alternative solutions:

(1) Plaintiff's counsel could be sent back to the drawing board to provide a more realistic portrayal (at least in the Court's perception) of the time allocable to the Klein claim. Because the Court assumes plaintiff's counsel have made their existing presentation in good faith, however, this possibility does not seem viable. It would require counsel to abandon their honest beliefs and reanalyze their time against a standard they do not share.

(2) Plaintiff's counsel's most recently tendered bottom-line figure of $115,000 could be viewed as the "lodestar" figure. In that event it would have to be dimmed by a *fractional*, rather than enhanced by a whole-number, multiplier to produce a reasonable fee chargeable against Bally.

(3) This Court could assess what appears to be a reasonable fee under all the circumstances known to it.

Essentially approaches (2) and (3) amount to the same thing in the world of reality.

This Court considers a multiplier of one-third under the second approach (producing the sum of $38,333) to be generous in light of the factors already discussed.[8] In addition, it will add a premium of $10,000 for the added marginal utility to stockholders represented by the formalization of the pro-

**5.** Horace, *Ars Poetica 1* 68 (found earlier in Aesop's Fables).

**6.** Throughout the litigation plaintiff's pervasive approach has been to view this action as a replay of "The Untouchables" or some other continuing review of organized crime in America. Whatever the validity of that effort as to plaintiff's unsuccessful claims, it is unconvincing to assert a reasonable need for the same coverage for the much more limited Klein claim. And the same may be said of counsel's unpersuasive arguments as to the relationship

of all their other activity to the Klein claim (had that been the sole focus of the lawsuit).

**7.** These are the numbers from Richard Watt's April 16 affidavit.

**8.** In arriving at the multiplier the Court has considered all the factors outlined in *Waters v. Wisconsin Steel Workers*, 502 F.2d 1309 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), recently reapproved in *Tidwell v. Schweiker*, 677 F.2d 560 at 570 (7th Cir. 1982). It finds the market analy-

tective provisions in Bally's by-laws resulting from the settlement. Utilizing approach (3), it could not in good conscience find as much as a $50,000 benefit to Bally and its stockholders from plaintiff's counsel's services in this litigation, and the figure of $48,333 resulting from the approach stated earlier in that paragraph strains that upper limit of allowability.

### Conclusion

Reasonable fees allowable to counsel for plaintiff are not in excess of $48,333, and Bally is therefore ordered to pay that amount to such counsel. Because plaintiff has submitted figures, but the parties have not really focused on allowability, of out-of-pocket expenses, this Court will await a prompt submission (either jointly or, in the case of any disagreement, separately) on that subject.

sis earlier stated in the text of this opinion

most significant.