Eileen **KENNEDY**, et al., etc., Plaintiffs,

v.

Louis J. **NICASTRO**, et al., Defendants.

No. 80 C 2820.

United States District Court,
N. D. Illinois, E. D.

Aug. 19, 1982.

Abraham N. Goldman, William J. Harte, Steven Ackerman, Jeffrey Slemmons, Chicago, Ill., for plaintiffs.

Barbara F. Altman, Reuben L. Hedlund, Hedlund, Hunter & Lynch, Chicago, Ill., Arthur M. Handler, Manuel W. Gottlieb and Paul A. Batista, Golenbock and Barell, New York City, for defendants.

---

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action, like the world in T.S. Eliot's *The Hollow Man,* has ended "not with a bang but a whimper." Plaintiffs have never generated a complaint that has survived a motion to dismiss. Under the agreed-upon settlement, which this Court approved at the scheduled hearing August 9, 1982, plaintiffs' counsel have the right to seek an attorneys' fee award for services rendered not only in this action but in a group of related actions [1]—not one of which has been successful on the merits.

Nonetheless plaintiffs' counsel argue plaintiffs are "prevailing parties" in the sense necessary for an allowance of fees. In that respect they have pointed to three things (Pl. Mem. 14): [2]

1. Settlement has produced a $150,000 cash fund to "satisfy all of petitioners' fee requests which might otherwise be taxable to Xcor."

2. Louis Nicastro ("Nicastro"), James Hughes ("Hughes") and William O'Brien ("O'Brien"), who were respectively Xcor's Chief Executive Officer, Chief Operating Officer and Chief Financial Officer when this action was filed, have been "removed and replaced as Xcor's chief officers."

3. Xcor has created an independent Special Committee that "can now review the entire situation and take any action it finds appropriate, including continuation of these actions by Xcor itself."

### Xcor and the Cash Fund

It is true that the $150,000 cash fund, available for payment of fees if and to the extent this Court awards them, is being put up by officer-director defendants and not by Xcor. That does not however make plaintiffs "prevailing parties" except through an impermissible kind of bootstrapping.

Lawsuits can hardly be viewed as successful from the plaintiffs' perspective if their principal result is to generate not any recovery for plaintiffs, but rather funds out of which plaintiffs' lawyers get paid. Xcor itself laid no claim to the fund under the settlement agreement. It was only in response to this Court's direct inquiry that the parties acknowledged that if the Court so determined, the unawarded portion of the $150,000 fund could (as in this Court's view it most logically should) go into the corporate coffers. And even on that score we are confronted with the anomaly that the *more* that factor is viewed as making plaintiffs "prevailing parties," the more could presumably be awarded as attorneys' fees, and the less would remain for Xcor's shareholders—thus making plaintiffs *less* viewable as "prevailing parties."

In the determination of "prevailing parties," then, generation of the cash fund is not really a factor unless *other* significant factors are also present that independently make plaintiffs prevailing parties. At most the fund provides a sort of self-fulfilling self-justification that, unless plaintiffs' counsel are successful on their other arguments, cannot be given real weight.[3]

---

1. Those other actions include three bankruptcy cases (79 B 39597, 80 A 1123 and 81 A 389), two bankruptcy appeals (80 C 5991 and 81 C 702), three appeals to our Court of Appeals (81–1392, 81–1593 and 81–2160) and an action in the Circuit Court of Cook County (82 CH 1214).

2. Although plaintiffs' counsel stated at the August 9, 1982 hearing on the proposed settlement that the fees matter was ready for decision (all briefing and submissions had been ordered to be filed *before* the hearing), they later moved on August 13 for leave to file a reply memorandum and affidavit and for oral argument. Xcor's counsel properly objected, but this Court granted such leave to file (but not for oral argument). That most recent filing reflects in microcosm some of the things that have plagued the litigation from the beginning: mischaracterizations of fact (as to Xcor's "explicit and implicit corporate approval" of the fee application), a partly argumentative "speaking affidavit" by attorney Abraham Goldman and other matters referred to later in this opinion.

3. In the memorandum this Court gave plaintiffs' counsel leave to file August 13, they urge that *Glicken v. Bradford,* 35 F.R.D. 144, 158 (S.D.N.Y. 1964) holds otherwise. It does not. If as in *Glicken* Xcor itself were found to benefit materially from the settlement, so it would

### "Removal" of the Challenged Xcor Officers

Defendants' response to plaintiffs' fee application is very brief, addressing not all what defendants term "at best [plaintiffs'] exercise in revisionist history" (Def. Mem. 1).[4] They do however challenge the contention that Messrs. Nicastro, Hughes and O'Brien were "removed" from their offices. Instead defendants say (*id.* at 2–3):

> None of these executives was "removed" from their Xcor positions. None of these executives was "removed" or terminated by Xcor as a result of this litigation or otherwise. Messrs. Hughes and O'Brien voluntarily resigned as Xcor's President and Chief Operating Officer and Executive Vice President-Finance respectively, and thereafter accepted other positions with Xcor; both continue as directors of Xcor. Mr. Nicastro voluntarily resigned as an officer and director of Xcor, to enable him to undertake the position as President, Chief Executive Officer and Chairman of the Board of another public company. None of these executive resignations was stimulated or caused by the instant litigation.

At the Court's request during the hearing on the settlement, defendants agreed to elaborate on that assertion. Appendix 1 to this opinion is the letter counsel then filed for that purpose. Plaintiffs' counsel responded at the hearing that rather than committing time and expense to further hearings, they desired the Court to make its own determination from the opposing contentions before it and such inferences as it deemed reasonable.

Nonetheless plaintiffs' counsel has since dealt with that subject in the final submission referred to in n. 2. Separating fact from argument in that submission, it appears that Appendix 1 is entirely accurate, subject only to the following possible additions:

1. Mr. Hughes was 46 and Mr. O'Brien 45 in September 1980.

2. Since September 1980 no Xcor mergers or acquisitions have taken place.

Without the factual hearing none of the parties wants to have, there is no predicate here for determining whether or not the departure of Mr. Nicastro, and the internal shifting of responsibilities of Messrs. Hughes and O'Brien, were tantamount to removal. In its practice of law this Court has represented major corporations and is of course familiar with the phenomenon of easing an executive out (or kicking an executive upstairs) while the corporation provides a sanitized cover story. But that may or may not have occurred here. Plaintiffs' counsel asks the Court to indulge in speculation not fact.

Unless corporate benefit can be found from this litigation, *no* fees are properly allowable to plaintiffs' counsel. Given the lack of facts submitted to it, at most this Court can view plaintiffs as having been minimally successful so as to permit *some* fee allowance. Based on the history of the litigation known to this Court, it would be a gross exaggeration to call them "prevailing parties" in any meaningful sense.

### Xcor's Special Committee

In its report to the Court regarding the proposed settlement, the Special Committee advised that based on its review:

> 626 (S.D.N.Y. 1973), it confirms (as this opinion requires) that for allowance of counsel fees in derivative actions "Substantial benefit to the corporation through the attorneys' efforts must be shown."

---

therefore have to pay attorneys' fees to plaintiffs' counsel in any case, then placing the financial burden of those fees on someone else would obviously be an added benefit to the corporation. But for the fee fund itself, with no financial benefit going to Xcor and hence to its shareholders (this would be the result of approving a $150,000 award), to be viewed as the *test* of "prevailing party" is unacceptable. As for the other authority plaintiffs' counsel cite, *Whittemore v. Sun Oil Co.,* 58 F.R.D. 624,

4. Defendants rely on this Court's knowledge of the litigation from its extended involvement, including its prior decisions reported at 503 F.Supp. 1116 (N.D. Ill. 1980) and 517 F.Supp. 1157 (N.D. Ill. 1981).

1. It had concluded "that the transactions challenged in this action were the consequence of the exercise of sound business judgment by members of [Xcor's] management and its Board of Directors based upon circumstances existing at the time of said transactions."

2. In light of all the facts, including its "analysis of the serious financial impact and burden of continued litigation on [Xcor] its business judgment was that the settlement was in the best interests of Xcor and its shareholders."

3. If however the settlement were disapproved by this Court, it had concluded that Xcor "should continue to defend the plaintiffs' action and is obligated to continue paying the costs of defense of the action on behalf of the individual officer-director defendants as well as its own costs."

Although the effect of the settlement was that this Court was not ultimately called to rule on the merits of this litigation, the Special Committee's expression of views is consistent with the Court's sense of the litigation from its series of rulings on the pleadings. In any case the litigation is now terminated, and mere creation of the Special Committee so that it could consider the merits—a consideration that led to a conclusion adverse to the plaintiffs—must also be regarded as at best a limited "benefit" to Xcor.

---

**5.** As in *Zilker* the Court has sought to take into account all the factors outlined in *Waters v. Wisconsin Steel Workers,* 502 F.2d 1309 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 803 (1976), recently reapproved in *Tidwell v. Schweiker,* 677 F.2d 560, 570 (7th Cir. 1982).

### Allowance of Fees

In sum then plaintiffs can be viewed as "prevailing parties" in only a very narrow sense. In that respect this case is strikingly and unfortunately parallel to *Zilker v. Klein,* 540 F.Supp. 1196 (N.D. Ill. 1982), except that (1) the degree of plaintiffs' "success" here is well down the scale from that in *Zilker* and (2) the waste motion here, in terms of expenditure of lawyers' time to no constructive end, has been enormous. No objective criteria are of real assistance in establishing the proper fee award in this case,[5] but in the Court's best judgment the allowable amount can be no more than 15% of the claimed "lodestar" figure of $223,951.25, or the sum of $33,-592.69.[6] In addition, counsel are allowed reimbursement of the out-of-pocket expenses of $11,082.91 set forth in the original application, plus $476.50 expended by Abraham Goldman to meet with the Special Committee (as reflected in the most recent supplemental submission).

### Conclusion

Of the $150,000 fund:

1. $45,152.10 shall be paid to plaintiffs' counsel (who may divide that award as they deem appropriate).

2. $104,847.90 shall be paid to Xcor. If and to the extent the escrowed amount has produced any income, such income shall be divided ratably between the two payments.

---

**6.** That discount is reflective of both (1) the grossly excessive time spent by plaintiffs' counsel in the litigation and (2) the limited extent to which plaintiffs could be termed "prevailing parties."

APPENDIX

MARTIN C. BARELL
JUSTIN M. GOLENBOCK
SEYMOUR KLEINMAN
DONALD D. SHACK
LEONARD W. WAGMAN
ARTHUR M. HANDLER
STEVEN R. FRANKEL
ARTHUR C. SILVERMAN
CHARLES ZALAZNICK
PETER ROTHENBERG
JEFFREY N. SIEGEL
MICHAEL A. LEVIN
MICHAEL C. SILBERBERG
H. JOSEPH MELLO
STEPHEN M. RATHKOPF
CHARLES F. CRAMES
RONALD S. KATZ
RICHARD J. KANE
ROBERT S. GOODMAN
DAVID J. ADLER

NORMAN J. MENELL
JORGE L. BATISTA
    COUNSEL

EDWARD H. DIETRICH
GERALD W. McFARREN
RONALD G. TODD
MANUEL W. GOTTLIEB
PAUL A. BATISTA
HARRIET N. COHEN
MICHAEL M. MEADVIN
ALAN D. SCHEINKMAN
WILLIAM NATBONY
RODNEY A. BROWN
SUSAN L. ROBBINS
GERI S. KRAUSS
LILLIAN S. WEIGERT
GARY N. HOROWITZ
HAROLD M. HOFFMAN
ADAM KIMMELL
DEAN ROLSTON
PAMELA F. ANSARY
JERRY GONTOWNIK
BRUCE P. MEYERSON
DANIEL C. VENET
BARBARA A. SHAPIRO
TERRI A. SHERMAN
ROBERT M. KAPLAN
JASON I. BITSKY
TIMOTHY P. DILLON
AMY E. LORBER

## GOLENBOCK AND BARELL
## 645 FIFTH AVENUE
## NEW YORK, N. Y. 10022

212–935–9800

CABLE "GOLEGAL"

TWX 710–581–3956

August 10, 1982

EXPRESS MAIL

Hon. Milton I. Shadur
United States District Judge
United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Re:  Kennedy, et al. v. Nicastro, et al.
     (Civil Action No. 2820)

Dear Judge Shadur:

At your request, I am writing to provide you with the following information:

1.  James J. Hughes was the President of Xcor International, Inc. (the "Corporation") from July 1979 until he resigned in September 1980 and Chief Operating Officer from April 1977 until his resignation in September 1980. Mr. Hughes was elected Vice Chairman of the Board of Directors in September 1980, and continues in that position to date.

2.  William P. O'Brien served as Executive Vice President—Finance from October 1975 until he resigned in September 1980 and as Chief Financial Officer from April 1977 until his resignation in September 1980, when he was elected Executive Vice President—Mergers and Acquisitions. He continues to serve in that position to date and also continues to serve as a director of the Corporation.

3.  Louis J. Nicastro served as Chairman of the Board and Chief Executive Officer of the Corporation from January 1972 to March 1981. On March 5, 1981 Mr. Nicastro resigned as an officer of the Corporation and, on July 27, 1981, resigned as a director of the Corporation and Chairman of the Finance Committee. Mr. Nicastro resigned in

272

order to devote his full time to service as Chairman of the Board of Directors and Chief Executive Officer of Williams Electronics, Inc., a public company, the securities of which are listed on the New York Stock Exchange.

In accordance with your directions at the hearing on August 9, 1982, a proposed form of Final Judgment and Order will be filed with the Court shortly.

Respectfully yours,

*Arthur M. Handler* /PAB

Arthur M. Handler

AMH/ls

cc:  Abraham N. Goldman, Esq.
     Reuben L. Hedlund, Esq.
     Norman E. Goldman, Esq.