STANLEY L. KAUFMAN, Appellant, *v.* LOUIS E. WOLFSON et al., Respondents.

First Department, May 15, 1956.

*Jacob Imberman* of counsel (*Irwin M. Taylor* with him on the brief; *Kaufman, Imberman & Taylor,* attorneys), for appellant.

*Edwin A. Lewis* of counsel (*Lawler & Rockwood,* attorneys), for Devoe & Raynolds Company, Inc., respondent.

BOTEIN, J. The decisional law and statutes relating to stockholders' suits are still in the process of evolving a somewhat plastic formula, designed to protect the corporation both against the faults of those in control and against needless and oppressive lawsuits. The stockholder's derivative action is a potent force for remedying certain injuries done to corporations, and, probably more important, the ever-present threat of such an action is a powerful prophylaxis against such abuses. While no encouragement is offered the "officious and impertinent intermeddler" (*Holmes* v. *Camp,* 180 App. Div. 409, 412), a stockholder is not barred from bringing a meritorious cause of action — no matter how minuscule his holding.

But the rules that have been formulated to block strike suits will also block meritorious actions, if applied too literally. While the essence of those rules that have proven workable must be affirmed and applied, they must also accommodate and mold themselves constantly to the swiftly changing concepts and techniques of the modern corporation. And the requirement that a plaintiff in a derivative stockholder's action be a stockholder of the company wronged has been re-examined in the frame of the realities of the functioning of the modern corporation.

These realities have brought recognition of the right of the stockholder to bring suit not only for wrongs inflicted directly on the corporation in which he holds stock, but for wrongs done to that corporation's subsidiaries which make indirect, but

nonetheless real, impact upon the parent corporation and its stockholders. "The stockholder is a mere nominal plaintiff — an instigator of the action on behalf of the corporation" (*Carruthers* v. *Waite Mining Co.*, 306 N. Y. 136, 140). Hence, the courts have recognized the propriety of so-called "double derivative" stockholders' suits (*Holmes* v. *Camp, supra*; *Goldstein* v. *Groesbeck*, 142 F. 2d 422; *Marcus* v. *Otis*, 168 F. 2d 649; *Saltzman* v. *Birrell*, 78 F. Supp. 778; 154 A. L. R. 1295, annotation; see, also, *Kaufman* v. *Wolfson*, 132 F. Supp. 733, involving an identical complaint).

It is no longer fatal that the complaining stockholder has never directly owned shares of stock in the subsidiary corporation. He brings his action in the right of the parent corporation in which he owned stock at the time of the questioned transaction (General Corporation Law, § 61). Suit by the stockholder of a parent corporation need not be limited only to situations in which the subsidiary is wholly owned or in which there is no one else who can sue. A derivative action should not be shrugged off because there are other injured stockholders of the company initially wronged, who are therefore directly affected and have the right to sue (cf. *Breswick & Co.* v. *Harrison-Rye Realty Corp.*, 280 App. Div. 820, appeal dismissed 304 N. Y. 840).

This appeal raises the question of whether the right to bring a double derivative suit is fixed by a formulistic boundary or whether the right is bottomed on some underlying rationale that gives it greater scope to meet certain situations.

Plaintiff sues on behalf of stockholders of New York Shipbuilding Corporation (hereinafter called Shipbuilding). The complaint alleges that defendant Wolfson, who was president and chairman of the board of directors of Merritt-Chapman & Scott Corporation (Merritt), secured control of Shipbuilding in 1953, and had himself elected president and chairman of the board of directors of that company. Wolfson and the individual defendants who were put in by him as directors caused Shipbuilding to begin the systematic acquisition of the stock of other companies, including 80,945 shares of Devoe & Raynolds Company, Inc. (Devoe), which gave them working control of that corporation. Wolfson was elected chairman of the board of directors of Devoe, and some of the other defendants were elected directors. The fifth and sixth causes of action then recite that the individual defendants caused Devoe improperly to expend large sums of money to assist defendant Wolfson in an attempt in 1954–1955 to secure control of Montgomery Ward, thus wasting the assets of that subsidiary of Shipbuilding.

Plaintiff has owned stock in Shipbuilding since 1948 but never owned any stock in Devoe, the wronged corporation. Furthermore, there is another novel and complicating factor in this case. After the alleged wrongdoing but prior to the commencement of this action, Merritt gave some of its stock to Shipbuilding in exchange for all of the latter corporation's holdings in Devoe. Therefore, when this action was instituted, neither plaintiff nor Shipbuilding owned any stock in Devoe. Special Term dismissed the fifth and sixth causes of action on the ground that plaintiff lacked capacity to sue for the alleged wrongs to Devoe, presumably since neither he nor Shipbuilding held any stock in Devoe at the time the action was commenced (*Hanna* v. *Lyon*, 179 N. Y. 107; *Kavanaugh* v. *Commonwealth Trust Co.*, 181 N. Y. 121; *Edelstein* v. *Frank*, 208 App. Div. 790; *Miller* v. *Miller*, 256 App. Div. 846, affd. 280 N. Y. 716).

Defendants urge that under the rule enunciated in *Hanna* v. *Lyon* (179 N. Y. 107, *supra*) Shipbuilding itself had no right to maintain the action — and therefore plaintiff could derive no such right through Shipbuilding. Shipbuilding had been divested of its direct holdings in Devoe, however, by the dealings of the very individuals who are defendants here. They were in control of all three corporations here involved, and were the ones who engineered Shipbuilding's exchange of its Devoe stock for shares of Merritt, which then became the controlling stockholder of Devoe.

In the situation presented by this complaint, the guiding consideration must be control. As stated in *United States Lines* v. *United States Lines Co.* (96 F. 2d 148, 151), "The justification for allowing a double derivative suit like the present to be maintained is that both the original corporation that is said to have suffered wrong and its shareholder corporation which had the right to bring a derivative suit were in the control of those charged with inflicting the corporate injury".

Since Shipbuilding now owns shares in Merritt, it still has an interest in the assets of Devoe, "and it can work no possible prejudice to the defendants who sets the machinery of justice in motion, so long as that person has an ultimate interest in the matter" (*Holmes* v. *Camp*, 180 App. Div. 409, 413, *supra*). By any number of corporate transfers the defendants might add links to the chain of plaintiff's ultimate interest in the Devoe corporation, but they could not obliterate that interest. Plaintiff should have his remedy whether it be regarded as a double derivative or a triple derivative action. The key to the sufficiency of the dismissed causes of action is the essential fact that control of all three corporations has remained unchanged.

In this era of corporate mobility a complaining stockholder should not be required to play a form of shell-and-pea game with a group of dominant directors who control all the corporations involved in the transfers of stock. The order appealed from dismissing plaintiff's fifth and sixth causes of action should be reversed, and the motion to dismiss denied.

RABIN, FRANK, VALENTE and BERGAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, and the motion denied.