MELVIN BROWN, Plaintiff-Appellant, v. RICHARD TENNEY *et al.*,
Defendants-Appellees.

First District (4th Division)   No. 86—0810

Opinion filed April 30, 1987.

Peter D. Kasdin and Philip J. Nathanson, both of Kasdin & Nathanson, of Chicago, for appellant.

Law Offices of Robert E. Zeitner, of Chicago (Linda S. Kagan, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff-appellant, Melvin Brown, brought an action for injunctive and monetary relief, based upon various alleged breaches of fiduciary duties and other corporate misconduct, against the defendants Richard Tenney, William Jell, and Agri-Econ, Inc. (collectively referred to as Tenney). Brown seeks this relief both individually against the individual defendant Richard Tenney and derivatively as a shareholder on behalf of T/B Holding Company (T/B) and Pioneer Commodities Incorporated (Pioneer).

In 1975, the individual defendant Richard Tenney and the plaintiff Brown formed the corporation Pioneer for the purpose of engaging in the commodities business. Brown and Tenney each owned 48.5% of the stock of Pioneer. In 1982, the shareholders of Pioneer formed T/B to act as a holding company for Pioneer. The shareholders exchanged their shares of stock in Pioneer for an equal percentage of stock in T/B. After the formation of T/B, the Pioneer stock became the property and principal asset of T/B.

In 1983, Brown filed this individual and derivative action against Tenney alleging that Tenney had engaged in, and was continuing to engage in, a course of conduct that was wasting, diverting, and damaging the assets of Pioneer and T/B. Tenney filed a motion to strike the complaint, which was granted on April 24, 1984. Brown was, at that time, given leave to file an amended complaint. In November of 1984, Brown's amended complaint was dismissed on Tenney's motion under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). Brown was again granted leave to file a second amended complaint.

From January 1985 to April 1985, the parties were involved in settlement negotiations; as a result, numerous continuances to file the second amended complaint were granted. The attempts at settlement, however, failed. Accordingly, the matter was set and continued on various occasions for a pretrial conference. In November of 1985, Brown filed a motion for leave to file the second amended complaint, as the last extension of time that was granted was to April 22, 1985. In response to Brown's motion, Tenney filed objections to this motion contending that the complaint was untimely and that Brown did not

have standing to bring this action on behalf of Pioneer because Brown did not own shares in Pioneer at the time the alleged misconduct occurred. Brown had also filed a motion for change of venue. The motions for leave to file the second amended complaint and for a change of venue were heard on March 12, 1986, at which time the trial court denied both motions. The action was therefore effectively dismissed. Brown now appeals.

On appeal, Brown argues that the trial court erred in denying leave to file the second amended complaint since his complaint does state a cause of action and he does have standing to bring this action. Further, Brown contends that the trial court erred in denying his motion for a change of venue. Tenney in reply contends that the trial court properly exercised its discretion in denying leave to file the second amended complaint on the grounds that the motion was untimely. As for the substance of the complaint, Tenney essentially argues that Brown has no standing to bring this suit on behalf of Pioneer. There is no contention that Brown does not have standing to bring a shareholder's derivative suit on behalf of T/B.

■■ Shareholder derivative suits are governed by section 7.80(a) of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1985, ch. 32, par. 7.80(a)). This section provides in pertinent part:

> "No action shall be brought in this State by a shareholder in the right of a domestic or foreign corporation unless the plaintiff was a shareholder of record at the time of the transaction of which he or she complains, or his or her shares or voting trust certificates thereafter devolved upon him or her by operation of law from a person who was a holder at such time."

As applied to this case, it is contended that Brown does not have standing to bring this action on behalf of Pioneer because at the time of the alleged misconduct Brown was a shareholder of T/B rather than a shareholder of Pioneer, as required by statute. Brown, in response, urges the adoption of the theory of a "double derivative action" which would result in allowing Brown to bring this action on behalf of Pioneer.

A double derivative action is one in which a shareholder of a parent or holding corporation seeks to enforce derivatively the corporation's derivative right to sue on behalf of the subsidiary. (Note, *Suits by a Shareholder in a Parent Corporation to Redress Injuries to the Subsidiary*, 64 Harv. L. Rev. 1313 (1951); 19 Am. Jur. 2d *Corporations* sec. 2253, at 155 (1986); see, *e.g., Birch v. McColgan* (S.D. Cal. 1941), 39 F. Supp. 358, 366.) Stated differently, the shareholder is effectively maintaining the derivative action on behalf of the subsidiary,

based upon the fact that the parent or holding corporation has derivative rights to the cause of action possessed by the subsidiary. (13 Fletcher, Cyclopedia of Corporations sec. 5977, at 207 (perm. ed. 1984).) Generally, this type of action arises where, as in this case, a parent corporation owns and controls a subsidiary. (19 Am. Jur. 2d *Corporations* sec. 2349, at 223 (1986); see, *e.g., Breswick & Co. v. Harrison-Rye Realty Corp.* (1952), 280 A.D. 821, 114 N.Y.S.2d 25.) The wrong sought to be remedied by the complaining shareholder is not only that done directly to the parent corporation in which he or she owns stock, but also the wrong done to the corporation's subsidiaries which indirectly, but actually, affects the parent corporation and its stockholders. See Note, *Remedies of Stockholder of Parent Corporation for Injuries to Subsidiaries,* 50 Harv. L. Rev. 963 (1937). See also *Kaufman v. Wolfson* (1956), 1 A.D.2d 555, 556, 151 N.Y.S.2d 530, 532.

The Illinois courts have not yet directly addressed the issue of whether double derivative actions should be recognized.[1] Some jurisdictions have declined to recognize these actions. (See, *e.g., Busch v. Mary A. Riddle Co.* (D.C. Del. 1922), 283 F. 443; *Sabre v. United Traction & Electric Co.* (D.C. R.I. 1915), 225 F. 601; *Sheehan v. Municipal Light & Power Co.* (S.D. N.Y. 1943), 54 F. Supp. 169; *Gaillard v. Natomas Co.* (1985), 173 Cal. App. 3d 410, 219 Cal. Rptr. 74; *Schneider v. Greater M. & S. Circuit, Inc.* (1932), 259 N.Y.S. 319, 144 Misc. 534, 236 A.D. 582.) The reluctance of these jurisdictions to adopt the theory seems to be based upon a strict adherence to the contemporaneous ownership requirement which provides that the complaining shareholder must have owned shares in the corporation at the time the transaction complained of occurred. See, *e.g., Gaillard v. Natomas Co.* (1985), 173 Cal. App. 3d 410, 219 Cal. Rptr. 74.

Notwithstanding that the recognition of double derivative suits relaxes the plaintiff's contemporaneous ownership requirement, the weight of authority supports the allowance of these actions. (See generally 154 A.L.R. 1295 (1945); Note, *Suits by a Shareholder in a Parent Corporation to Redress Injuries to the Subsidiary,* 64 Harv. L. Rev. 1313-14 (1951).) The acceptance of the action acknowledges the realities of the changing techniques and structures of the modern cor-

---

[1]An attempt to bring a double derivative action, however, arose in the case of *Kennedy v. Nicastro* (N.D. Ill. 1981), 517 F. Supp. 1157. Without full discussion, the court noted that in order to pursue a double derivative claim, the plaintiff must show that the corporation on whose behalf the claim is being brought is a subsidiary of the corporation in which the plaintiff owns stock. The plaintiff in *Kennedy* could not make such a showing.

poration. (*Kaufman v. Wolfson* (1956), 1 A.D.2d 555, 556-57, 151 N.Y.S.2d 530, 532.) Various theoretical bases have been relied upon by the courts to support the adoption of double derivative suits. (See generally Note, *Suits by a Shareholder in a Parent Corporation to Redress Injuries to the Subsidiary*, 64 Harv. L. Rev. 1313, 1313-14 (1951); 13 Fletcher, Cyclopedia of Corporations sec. 5977, at 207 (perm. ed. 1984) (holding company owes a duty to use its control of the subsidiary to right any wrong to it, and the shareholders may, in effect, seek specific performance of that duty); see, *e.g., Goldstein v. Groesbeck* (2d Cir. 1944), 142 F.2d 422 (adopting the theory that a shareholder's suit is in essence a suit by a beneficiary of a fiduciary to enforce a right); *United States Lines, Inc. v. United States Lines Co.* (2d Cir. 1938), 96 F.2d 148 (action allowed based upon the fact that both corporations were controlled by the same individuals); *Hirshhorn v. Mine Safety Appliances Co.* (W.D. Penn. 1944), 54 F. Supp. 588 (action recognized by analogizing it to one in which the court pierces the corporate veil); *Martin v. D.B. Martin Co.* (1913), 10 Del. Ch. 211, 88 A. 612 (action allowed based upon agency concepts).) An additional consideration noted by the courts allowing double derivative suits is:

> "[T]hat the burden of the damage or loss to the second corporation will ultimately fall on the shareholders in the holding corporation, through depreciation of the value of the stock of the holding corporation resulting from the wrong done to the second corporation which depreciates the value of its assets and the value of its stock so held." 19 Am. Jur. 2d *Corporations* sec. 2349, at 223 (1986).

In this case we have not been presented with, nor has our research led us to, any sufficient contrary legal or equitable theory which sets forth a persuasive argument for denying a shareholder in Brown's position the right to maintain a double derivative action. On the contrary, we agree with the authorities that the concepts governing corporate existence must be adaptable to the changing corporation of modern society. Unexamined observance to rigid and outmoded theories may result in inequitable decisions that fail to comport with the realities of corporate structure. For these reasons, we believe that double derivative suits should become part of the law of this State.

■■■ As applied to the facts at bar, Brown has alleged in his complaint that he is a shareholder of T/B Holding Company, which in turn owns all the stock of Pioneer. Further, the complaint alleges various wrongs done to Pioneer that would give rise to a cause of action. Additionally, to sustain a double derivative cause of action it is necessary that the directors of both corporations have refused, after due request,

to institute an action in the name of either company. (13 Fletcher, Cyclopedia of Corporation sec. 5977, at 207 (perm. ed. 1984).) Brown alleges that he did in fact make a demand upon Tenney in this case. It is also important to note, however, that generally in a case such as that before us, where the majority of directors are themselves involved in the matters complained of, it is evident that a demand would be unavailing and therefore can be excused. (*Conway v. Conners* (1981), 101 Ill. App. 3d 121, 126, 427 N.E.2d 1015.) In light of the fact that Brown has satisfied the requirements necessary to bring a single derivative action, we believe that under the facts of this case Brown also has standing to bring a double derivative action. Consequently, the trial court erred in denying leave to file the second amended complaint.

■ With regard to Tenney's contention that the trial court was correct in denying Brown leave to file the second amended complaint on the ground that the complaint was untimely, we do not agree. The delay in filing the second amended complaint was due to the fact that the parties were extensively involved in settlement negotiations. Because of this fact, the majority of continuances to file the second amended complaint were agreed orders. Tenney cannot now seek to preclude Brown from filing an amended complaint on the basis of untimeliness.

■ The second issue raised on appeal by Brown is that the trial court erred in denying his motion for change of venue. A change of venue is allowed where the party or his attorney fears that he will not receive a fair trial because the judge is prejudiced against him or his attorney. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001.) However, this motion must be made before the judge has ruled on any substantive issue in the case. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(c).) In this case, the judge had ruled on two motions to dismiss and a motion to vacate, granted motions to both accelerate and compel discovery, and scheduled and continued the pretrial conference. In light of the fact that these substantive rulings were made before Brown sought a change of venue, we believe that Brown's motion was untimely and therefore was properly dismissed.

For the foregoing reasons, the decision of the trial court is reversed with respect to the denial of leave to file the second amended complaint and is affirmed with respect to the denial of the motion for change of venue.

Affirmed in part, reversed in part.

JOHNSON and LINN, JJ., concur.