(No. 65367.—

MELVIN BROWN, Appellee, v. RICHARD TENNEY *et al.*, Appellants.

*Opinion filed December 6, 1988.*

350

Law Offices of Robert E. Zeitner, of Chicago (Linda S. Kagan, of counsel), for appellants.

Philip J. Nathanson, of Chicago (Nathanson & Wray, of counsel), for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

In December of 1983, plaintiff, Melvin Brown, filed a three-count verified complaint in the chancery division of the circuit court of Cook County against Richard Tenney, William Jell, Agri-Econ, Inc., Pioneer Commodities, Inc., and T/B Holding Company (collectively, defendants) for injunctive and other relief on behalf of himself and T/B Holding Company (T/B Holding) as well as Pioneer Commodities, Inc. (Pioneer). The trial court granted defendants' motion to strike the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), and granted plaintiff 30 days in which to file an amended complaint. An amended complaint was filed, but it too was dismissed pursuant to another section 2—615 motion made by defendants. Plaintiff was granted 21 days to file a second amended complaint. However, the parties subsequently began settlement negotiations and various agreed orders were en-

tered extending the filing deadline for the second amended complaint. The trial court intervened in an effort to prompt settlement, but the negotiations failed. In the meantime, the deadline for filing the second amended complaint had passed without extension, and in November of 1985, plaintiff filed a motion for leave to file an eight-count amended verified complaint. Plaintiff also filed a verified petition for change of venue. In March of 1986, the trial court denied the plaintiff's petition for a change of venue and also denied with prejudice the plaintiff's motion for leave to file the second amended verified complaint. Plaintiff appealed, and the appellate court affirmed the dismissal of the petition for change of venue but reversed the denial of leave to file the second amended complaint. (155 Ill. App. 3d 605.) We allowed the defendants' petition for leave to appeal under Rule 315 (107 Ill. 2d R. 315).

The only issue raised on appeal is whether Illinois corporate law recognizes a shareholder's right to bring a "double" derivative suit. A double derivative suit is one wherein a shareholder of a parent or holding company seeks to enforce a right belonging to a subsidiary of the parent or holding company.

This cause of action was decided at the pleading stage. Consequently, all properly pleaded facts must be taken as true and the complaint should not have been dismissed unless it clearly appeared that no set of facts could be proved which would have entitled the plaintiff to recover. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.

Plaintiff's eight-count, second amended complaint asserts numerous claims. We briefly state only those facts alleged in the complaint which raise the so-called "double" derivative action, assertedly brought on behalf of Pioneer and T/B Holding.

The complaint alleges that Pioneer was formed as an operating company for purposes of engaging in the com-

modities brokerage and services business, and that Pioneer was incorporated under Illinois law in October of 1975 by plaintiff, defendant Tenney, and a third party, James P. Farnsworth. The three also served as Pioneer's directors.

Plaintiff became Pioneer's vice-president and was its chief operating officer, working out of Pioneer's Chicago headquarters. Defendant Tenney, Pioneer's president, was responsible for coordinating branch office functions, and arranging educational and promotional seminars. Pioneer paid the fees and expenses for these seminars, which were produced through Agri-Econ, Inc., a corporation in which defendant Tenney was the sole shareholder. Defendant Tenney lived in Florida and periodically came to the Chicago headquarters. Defendant William A. Jell, a Pioneer employee and Tenney associate, replaced Farnsworth as a Pioneer director in 1982.

The complaint further alleges that on August 31, 1982, Pioneer ownership was vested in plaintiff, as a 48.5% shareholder; defendant Tenney, also a 48.5% shareholder; Jennie Goldsby, a 2% shareholder; and Bonnie Fender, a 1% shareholder.

The complaint alleges that these four Pioneer shareholders incorporated T/B Holding as an Illinois corporation, on August 31, 1982, to act as a holding company for Pioneer. They then exchanged their Pioneer shares for an equal percentage of T/B Holding shares, through which they have maintained their interest and control over Pioneer from that date. Plaintiff and defendants Tenney and Jell were elected as T/B Holding directors. The Pioneer stock became the principal asset of T/B Holding. The complaint also alleges that on May 29, 1983, defendant Tenney obtained Goldsby's and Fender's proxies to vote their shares in T/B Holding, effectively giving him control over the holding company.

The complaint further alleges conduct which, if proven true, would indicate that the defendants have abused, manipulated, damaged, diverted and wasted Pioneer assets. Additionally, the complaint alleges that the defendants have engaged in a pattern of self-dealing.

Count I of the complaint alleges single and double derivative causes of action and seeks injunctive and other relief, enjoining defendants from wasting, diverting and damaging the assets of Pioneer and T/B Holding. This count alleges that defendants Tenney and Jell breached fiduciary duties and duties of loyalty, that defendants Tenney and Jell converted Pioneer corporate funds through Agri-Econ, Inc., a defendant corporation, and that defendants Tenney and Jell have converted Pioneer corporate funds to their personal use without making repayment, among other wrongs. The second count also asserts single and double derivative actions, and alleges that defendants Tenney and Jell breached fiduciary duties to both T/B Holding and Pioneer, engaged in self-dealing, and have converted corporate funds to their personal use. The fourth count alleges conduct similar to that alleged in count II but pertains only to defendant Tenney. The other counts of the complaint involve individual causes of action and are of no concern to this appeal.

The appellate court found, and the defendants do not contest, that the requirement that a shareholder make a demand upon the corporation to correct any alleged wrongs has been fulfilled, and that plaintiff has standing to pursue his own individual, nonderivative causes of action, as well as the single derivative actions asserted on behalf of T/B Holding. The appellate court also held that the complaint states a cause of action in each of its counts, and that the plaintiff had standing to bring suit on behalf of Pioneer, even though he was not a shareholder of record in Pioneer. The only question now be-

fore us is whether the appellate court committed reversible error in so ruling.

The derivative suit is a device to protect shareholders against abuses by the corporation, its officers and directors, and is a vehicle to insure corporate accountability. (*Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U.S. 541, 548, 93 L. Ed. 1528, 1537, 69 S. Ct. 1221, 1226.) The derivative action really consists of two causes of action: one against the directors for failing to sue; the second based upon the right belonging to the corporation. (*Feen v. Ray* (1985), 109 Ill. 2d 339, 345.) The action is typically brought by a minority shareholder, because a majority or controlling shareholder can usually persuade the corporation to sue in its own name.

Here, all parties agree that the plaintiff can maintain a single derivative action as governed by section 7.80 of the Business Corporation Act of 1983 (the Act) (Ill. Rev. Stat., 1984 Supp., ch. 32, par. 7.80). The dispute is over whether plaintiff can prosecute a cause of action on behalf of a subsidiary that is owned and controlled by the holding company in which he is a shareholder of record.

A holding company is a corporate body with a concentrated ownership of shares of stock in another company, by which it exercises control, supervision or influence over the policies and management of the company whose shares it holds. (See *North American Co. v. Securities & Exchange Comm'n* (1946), 327 U.S. 686, 701, 90 L. Ed. 945, 956, 66 S. Ct. 785, 794.) It has been noted that "[t]he holding company has given rise to numerous new problems of the protection of stockholders from the misconduct of their directors." (Note, *Remedies of Stockholder of Parent Corporation for Injuries to Subsidiaries*, 50 Harv. L. Rev. 963 (1937).) A shareholder in a holding company cannot maintain a classic single derivative action against the subsidiary because he or she will not, technically, meet the threshold share-ownership re-

quirement to bring a derivative action against the subsidiary. This is because a single derivative action on behalf of the subsidiary may only be maintained by a shareholder of record of the subsidiary—here, the holding company. A shareholder of record in the holding company would, therefore, as defendants conceded at oral argument before this court, be without remedy, even where, as here, the holding company is the wrongdoer. The additional layer in the corporate structure would prevent the righting of many wrongs and would insulate the wrongdoer from judicial intervention. (See *Holmes v. Camp* (1917), 180 A.D. 409, 411, 167 N.Y.S. 840, 842.) The law, however, cannot be deceived by specious and illusory devices, disguises or circuity of action. *D.I. Felsenthal Co. v. Northern Assurance Co.* (1918), 284 Ill. 343, 353-54.

To prevent this from occurring, and falling victim to the alluring and disingenuous argument that a shareholder in a holding company has no interest in the subsidiary, courts have fashioned a remedy from the single derivative cloth—the double derivative suit. In a single derivative suit the shareholder derives the power to sue directly from the unexercised authority of the corporation. In a double derivative suit, the shareholder of a holding company seeks to enforce a right belonging to the subsidiary, and only derivatively to the holding company. This means that the power to bring suit flows directly from the injured subsidiary, but both the subsidiary and the holding company would have to fail, refuse or be unable to redress the injury to the subsidiary. (See, *e.g., Haberman v. Washington Public Power Supply System* (1987), 109 Wash. 2d 107, 147, 744 P.2d 1032, 1060, *mod. on other grounds* (1988), 110 Wash. 2d 24, 750 P.2d 254; see also 13 W. Fletcher, Cyclopedia of Private Corporations §5977, at 207 (perm. ed. 1984); Annot., 154 A.L.R. 1295 (1945).) The shareholder of record in the

holding company is a mere instigator enforcing the second cause of action—the one belonging to the corporation—arising out of the derivative action. *Feen*, 109 Ill. 2d at 345.

The direct beneficiary of a double derivative action, as in the single derivative suit, is the corporation which initially possessed the right to bring suit, as any recovery will flow towards it. (*Haberman*, 109 Wash. 2d at 147-48, 744 P.2d at 1060.) The indirect beneficiary of a double derivative action is the "champion" shareholder, who brings the action on behalf of the injured subsidiary utilizing the holding company's derivative right. The right to bring the derivative action falls to the shareholder when the holding company fails to protect its property and assets. Here again, the subsidiary is controlled and dominated by the holding company. Consequently, the "champion" shareholder may have his or her attorney fees and costs paid by the holding company. Additionally, all shareholders would receive the increased value on their shares in the holding company via the avenged and rejuvenated subsidiary. 19 Am. Jur. 2d *Corporations* §2349, at 223 (1986).

In conformance with the guiding principles behind the single derivative action, the injured subsidiary, being the real party in interest, must be made a party to the double derivative action as a defendant (*Druckerman v. Harbord* (1940), 174 Misc. 1077, 22 N.Y.S.2d 595), and the shareholder, enforcing the derivative right belonging to the holding company, must also name the holding company as a party defendant (*Sternberg v. O'Neil* (Del. Ch. 1987), 532 A.2d 993, 999).

With this as a backdrop, we turn to the contentions of the parties. Defendants contend that the weight of authority does not support the allowance of a double derivative suit. The defendants also assert that this court is powerless to act in this situation because the legislature

did not explicitly authorize a double derivative suit when it passed the Act. Defendants further argue that it would be against the public policy of this State to recognize a double derivative cause of action. Defendants also contend that recognition of the double derivative action will have a chilling effect on business incorporations in the State. Plaintiff responds that this court should accept the theory of double derivative actions and that, as a shareholder of record of the holding company, he has the requisite interest and the necessary standing to bring such an action. The plaintiff encourages this court to look through the underlying corporate fiction to examine the corporate bodies, and discover that the blows inflicted on the subsidiary have been transferred through his share ownership in the holding company and have manifested themselves in an injury to him.

We agree with the plaintiff that this court should not be derailed by convenient corporate formations which do not reflect business realities. It is a well-settled principle that the court will look behind and beneath the corporate veil to view the substance and face of the corporate body, and that it will disregard corporate legal fictions when used as a shield for wrongful acts. (*Felsenthal Co.*, 284 Ill. at 353-54.) For beneath the corporate cloak beats the heart of its shareholders. As was said in *Meeker v. Winthrop Iron Co.* (W.D. Mich. 1883), 17 F. 48, 50, *rev'd on other grounds* (1887), 122 U.S. 635: "But who is the *** [c]ompany? A mere entity created by law, without body or soul, endowed with capacity to acquire, hold, and dispose of property, in trust for the use and benefit of the natural persons of whom it is composed, in proportion to their several interests therein. But its property belongs in equity to the corporators ***. Hence, courts of equity look beyond the artificial creature in whom legal title is vested, to the real persons which it represents."

The double derivative action is a long-standing doctrine of equity jurisprudence, having been woven into the quiltwork of equitable principles covering shareholder-corporate relations over a century ago. (See *Ryan v. Leavenworth, Atchison & Northwestern R.R. Co.* (1879), 21 Kan. 365, 402-04.) Although the theory underlying the action has varied (see, *e.g.,* 155 Ill. App. 3d at 609 (and cases cited therein); see also *Breswick & Co. v. Harrison-Rye Realty Corp.* (1952), 280 A.D. 820, 820-21, 114 N.Y.S.2d 25, 26 (holding company and operating company); *Piccard v. Sperry Corp.* (S.D.N.Y. 1939), 30 F. Supp. 171, 171-73 (subsidiary is a mere conduit or instrumentality)), it has, contrary to defendants' contention, met with nearly universal acceptance (see, *e.g.,* *Kennedy v. Nicastro* (N.D. Ill. 1981), 517 F. Supp. 1157, 1162; *Gadd v. Pearson* (M.D. Fla. 1972), 351 F. Supp. 895, 900-01; *Kaufman v. Wolfson* (1956), 1 A.D.2d 555, 557, 151 N.Y.S.2d 530, 532-34; see also 2 Model Business Corp. Act 761-62 (3d ed. Supp. 1987); Model Business Corp. Act 50 (2d ed. 1971); Blumberg, The Law of Corporate Groups: Procedural Law §16.01 *et seq.,* at 350-57 (1983)).

Defendants have cited to cases which assertedly have not recognized the double derivative cause of action. We need not discuss these cases in detail because they do not involve a holding company-subsidiary company context; rather, they involve survival of actions after a corporate merger. We therefore decline to follow them.

The overwhelming weight of authority does accept the double derivative action. This is especially so when, like the case here, a subsidiary controlled or dominated by a holding company is involved. See, *e.g.,* Principles of Corporate Governance: Analysis & Recommendations §7.02, at 48-49 (Tent. Draft No. 8, 1988) ("The more frequent and better practice has been to limit the doctrine to situations where the shareholder's corporation holds

at least a de facto controlling interest in the injured corporation"); *S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp.* (1950), 326 Mass. 99, 110, 93 N.E.2d 241, 247.

Defendants assert that this court's recognition of the double derivative action would be tantamount to judicial legislation. Contrary to the defendants' contention, this decision merely recognizes the equitable origins of the derivative action and this court's prior application of equitable principles in the shareholder-corporation context.

It has been said that a shareholder derivative action is nothing more than a suit by a beneficiary of a fiduciary. A double derivative suit is simply an extension of that theory, in that the beneficiary is in turn also a fiduciary. (*Goldstein v. Groesbeck* (2d Cir. 1944), 142 F.2d 422, 425.) Illinois law has long recognized that corporate officers and directors occupy a fiduciary relationship towards their corporation and shareholders (*Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 278), and that when they fail to act in their fiduciary capacity no one represents the interest of the corporation or its shareholders (*Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 109).

This lack of representation will be even more pronounced when the directors of a holding company are also the directors of a subsidiary. Such interlocking directorates present special problems, and the dealings between the two corporations must be watched with a jaundiced eye. (W. Hale, Law of Private Corporations in Illinois 184 (1916).) The court will not be blinded by mere corporate form, as "[t]he need for the derivative remedy is illustrated where those in control of the corporation are the alleged wrongdoers, for they can compound their wrong by preventing corporate action against themselves." Model Business Corp. Act 33 (2d ed. 1971).

Here, plaintiff contends that the defendants are allegedly the mischief-makers and wrongdoers, directing the subsidiary and its course of events for their own benefit; they control and dictate the policies of the subsidiary at will and without restraint and are not deterred from misconduct, as they also control the holding company. In other words, according to the plaintiff, the subsidiary is accountable to no one since its shareholder, the holding company, is controlled by the wrongdoers. There is no justice in denying relief under these circumstances, and this court may look through the corporate form.

If there was no holding company, there would be no subsidiary. The minority shareholder could then bring a single derivative suit without difficulty. In reality, the holding company here is being used as a shield, when actually it is transparent to the dispute. The real owner of the subsidiary is not the holding company but rather the holding company's shareholders, which includes plaintiff. Being unjustly blocked by both corporations, the subsidiary and the holding company, plaintiff's only recourse lies in the courts.

Regardless of the label attached to the shareholder's suit, *i.e.*, single, double, triple or multiple, it is still derivative in nature and consequently subject to equitable principles. (See *Rosenthal v. Burry Biscuit Corp.* (1948), 30 Del. Ch. 299, 309-13, 60 A.2d 106, 111-13 (a derivative action must be brought in equity, as it involves an equitable remedy).) Therefore, we hold that a double derivative action may be maintained by a shareholder of record in a holding company, on behalf of a subsidiary controlled or dominated by the holding company, after due demand is made to, and rejected by, the subsidiary and the holding company. Thus, plaintiff is entitled to bring a derivative suit on behalf of the subsidiary company that the holding company, in which he is a shareholder of record, controls. This decision is consistent

with the purpose of the procedural requirements set forth in the Act. See 83d Ill. Gen. Assem., Senate Proceedings, November 4, 1983, at 52 (statements of Senator Rock) ("[The Act] will *** result in better protection for minority shareholders"); Illinois Business Corp. Act §7.80, Official Comments, at 394-95 (3d ed. Supp. 1984).

Defendants assert several policy reasons for rejecting the double derivative cause of action, including a loss of corporate franchise tax revenue, a dearth of directors' indemnity insurance, corporations besieged by requests for information from all sources, and a flood of shareholder actions. We do not envision that these results will come to pass. To the contrary, we are concerned with the consequences of not permitting a shareholder of record in a holding company to redress wrongs committed against a subsidiary by defalcating, abusive and manipulative directors and officers.

Having established the framework for this type of derivative action, "[w]e judge that under the circumstances the plaintiff here should be permitted to plead again." *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 556.

Defendants also assert that the appellate court abused its discretion by failing to address their remaining contentions: that the amended complaint did not cure any of the earlier defects; that plaintiff waived his right to advance the double derivative theory on appeal; and that the appellate court failed to address all of the reasons why plaintiff was denied leave to file his second amended verified complaint. Even here, defendants present no argument, other than conclusory statements, in support of their contentions. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and is, therefore, waived. (*Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d

95, 111-12.) Accordingly, we decline to address these issues.

Finally, the defendants filed a motion, pursuant to Supreme Court Rule 341 (107 Ill. 2d R. 341), to strike certain portions of the plaintiff's brief as containing facts which were not admitted into evidence. The motion was taken with the case. Because the complaint was dismissed at the pleading stage pursuant to defendants' section 2—615 motion (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), no facts were admitted into evidence. We fail to understand the significance or import of defendants' motion, as this court, in reviewing the granting of a section 2—615 motion, must accept all properly pleaded facts as true. Defendants have never contended that the facts were not properly pleaded. Therefore, the defendants' motion is denied.

For the foregoing reasons, the decision of the appellate court is affirmed.

*Appellate court affirmed.*