In re 4 C SOLUTIONS, INC., Debtor.

No. 02–84536.

United States Bankruptcy Court, C.D. Illinois.

Dec. 11, 2003.

Barry M. Barash, Galesburg, IL, for Debtor.

Neal H. Levin, Chicago, IL, Gregg N. Grimsley, Nicholas J. Bertschy, Peoria, IL, Richard A. Davidson, IA, Steven A. Ginther, II, Jefferson City, MO, for Creditor.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court is the issue of confirmation of the Chapter 11 Plan of Reorganization filed by the Debtor, 4 C Solutions, Inc. ("DEBTOR"), and the objection to confirmation by Bank Austria Creditanstalt Corporate Finance, Inc. ("BANK AUSTRIA"). The Court agrees with BANK AUSTRIA that the plan violates the absolute priority rule and may not be confirmed.

## FACTS

The DEBTOR is an Illinois corporation. One hundred percent (100%) of the DEBTOR'S common stock is owned by a holding company, 4 C Solutions Holdings, Inc. ("4CS HOLDINGS"), which conducts no business apart from owning the DEBTOR'S shares. The majority shareholder of 4CS HOLDINGS is Ashok Kartham ("KARTHAM"), who owns 66.61% of its stock. KARTHAM is also the President, Chief Executive Officer and Chief Operating Officer of the DEBTOR.

KARTHAM founded the DEBTOR in 1995, as a software consulting and development firm. BANK AUSTRIA is the largest creditor, with a claim in excess of $3.0 million, secured by a blanket lien on substantially all of the DEBTOR'S assets. BANK AUSTRIA also holds a minority ownership interest in 4CS HOLDINGS.

The DEBTOR filed its voluntary Chapter 11 petition on October 3, 2002. Its Chapter 11 Plan of Reorganization (the "PLAN"), filed on January 29, 2003, in addition to classifying secured and unsecured claims, designates three classes of equity interests. The sole member of Class ES1 is 4CS HOLDINGS, as owner of all of the DEBTOR'S common stock. Class ES2 consists of present and former

employees holding options to purchase shares of the DEBTOR'S common stock. Class ES3 consists of the holders of warrants to purchase shares of the DEBTOR'S common stock.

With respect to the treatment of those classes of equity interests, the PLAN provides as follows:

> The following applies to the Classes ES1, ES2, and ES3. The shares of the Class ES1 shareholder (Holdings) [4CS HOLDINGS], the shares of Holdings' shareholders, the stock options of the Class ES2 stock optionees, and the owners of warrants described in Class ES3 shall, upon plan confirmation, be cancelled.

> Simultaneously with the cancellation of the old common stock, the stock options, and the warrants, 100,000 new shares of 4 C Solutions, Inc., no par common stock ("Reorganization Shares") shall be issued to Ashok Kartham, who shall be the reorganized debtor's sole shareholder. Holdings shall be dissolved.

The PLAN does not provide that KARTHAM will pay any money or transfer or convey any property in consideration of the issuance of the Reorganization Shares. Neither does the PLAN provide any other person or entity the opportunity to acquire an ownership interest in the reorganized DEBTOR.

The PLAN also provides that BANK AUSTRIA'S claim will be reduced to $1.0 million, treated as secured, and paid with interest at five percent (5%) over sixty months. The PLAN denies BANK AUSTRIA an allowed claim for its unsecured deficiency balance.

BANK AUSTRIA objects to the PLAN, alleging, among other things, that it violates the absolute priority rule. Characterizing 4CS HOLDINGS as a mere shell corporation, BANK AUSTRIA asserts that KARTHAM, as majority shareholder of 4CS HOLDINGS, should be considered to hold an equity interest in the DEBTOR for purposes of the rule. A determination that KARTHAM is not "old equity" because of the intermediary holding company would, argues BANK AUSTRIA, elevate form over substance.

■ Relying on the fact that the DEBTOR'S stock is owned by 4CS HOLDINGS, the DEBTOR contends that KARTHAM is not "old equity" and that the absolute priority rule is not implicated by the PLAN'S proposal to issue one hundred percent (100%) of the reorganized DEBTOR'S stock to him. Conceding that KARTHAM is not contributing any "new value," the DEBTOR argues that new value from a shareholder is only required when the absolute priority rule is in play.[1] Pointing out that BANK AUSTRIA required the use of a holding company as a condition of its prepetition loan, the DEBTOR also takes the position that BANK AUSTRIA is estopped from alleging that KARTHAM is "old equity."

## *ANALYSIS*

■ The Court rejects the DEBTOR'S contention that BANK AUSTRIA is estopped from taking the position that KARTHAM is old equity. In the context of litigation, the doctrine of equitable estoppel is most often applied to preclude a statute of limitations defense if the defendant takes active steps to prevent the plaintiff from suing in time, such as hiding

---

1. The new value corollary, if still viable, requires a contribution of money or money's worth; a proposed contribution of future labor, experience and expertise is insufficient, as a matter of law, to overcome the absolute priority rule. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

**596**

evidence or promising not to plead the statute of limitations. *Shanoff v. Illinois Dept. of Human Services,* 258 F.3d 696 (7th Cir.2001). More generally, equitable estoppel is a doctrine which precludes one party from asserting a claim or defense against another party who has detrimentally altered its position in reliance on the former's misrepresentation or failure to disclose a material fact. *Kennedy v. U.S.,* 965 F.2d 413 (7th Cir.1992). BANK AUSTRIA concedes that it did, in fact, require the DEBTOR to set up 4CS HOLDINGS as a condition of its loan in 1999. There is no dispute that BANK AUSTRIA had a business purpose for doing so, related to certain federal banking regulations. This Chapter 11 case was unforeseen at that time. There is nothing in the record to indicate that BANK AUSTRIA made any misrepresentation or nondisclosure upon which the DEBTOR detrimentally relied in relation to the holding company requirement. BANK AUSTRIA is not estopped from asserting in this Chapter 11 case that KARTHAM is old equity.

One of the requirements for confirmation of a Chapter 11 plan is that each class of claims or interests has accepted the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Where all other requirements are met, a plan may be confirmed via cramdown over the objection of an impaired class, "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). The condition that a plan be fair and equitable with respect to a class includes the requirement, with respect to a class of unsecured claims, that "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(ii). This latter re-

quirement is the codification of the absolute priority rule. *Bank of America Nat. Trust and Sav. Ass'n. v. 203 North La-Salle Street Partnership,* 526 U.S. 434, 442, 119 S.Ct. 1411, 1416, 143 L.Ed.2d 607 (1999). Priority is "absolute" in the sense that every cent of each class comes ahead of the first dollar of any junior class. *Kham & Nate's Shoes No.2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1359 (7th Cir.1990).

The common thread running through cases involving the absolute priority rule is a refusal to allow prior equity owners to trade on their "insider" status to acquire new equity for less than its value. *Matter of Wabash Valley Power Ass'n, Inc.,* 72 F.3d 1305, 1315 (7th Cir.1995). The rule has three components: (1) the identification of junior claims or interests; (2) the identification of any property retained by the holders of such claims or interests; and (3) the determination whether the property is retained "on account of" a junior claim or interest. *Id.* at 1313.

The PLAN bifurcates BANK AUSTRIA'S claim, pursuant to Section 506(a), into an allowed secured claim in the amount of $1.0 million and a disallowed unsecured claim for the deficiency balance. As the holder of an unsecured claim that will not be paid in full, BANK AUSTRIA triggered the confirmation by cramdown requirements, and the absolute priority rule, by voting to reject the PLAN. If KARTHAM owned the DEBTOR'S stock in his own name, there is no doubt that the PLAN would violate the absolute priority rule by its provision to issue KARTHAM, as old equity, all of the reorganization shares of stock. Equity interests are junior to unsecured creditors and stock is "property" for purposes of Section 1129(b)(2)(B)(ii) even if the debtor has a

negative net worth. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). A shareholder's retention or receipt of stock in the reorganized debtor, where a class of unsecured creditors is not paid in full, runs afoul of the absolute priority rule. *Kham & Nates's Shoes*, 908 F.2d at 1360.

■ Since KARTHAM does not own any of the DEBTOR'S stock in his own name, the question at bar is whether, for purposes of Section 1129(b)(2)(B)(ii), KARTHAM is "the holder of any claim or interest" who will receive or retain property "on account of" such claim or interest. Although KARTHAM does hold a claim against the DEBTOR, for repayment of a loan, BANK AUSTRIA does not allege that his receipt of the reorganized DEBTOR'S stock under the PLAN is "on account of" that claim. Rather, BANK AUSTRIA focuses on the equity interest of KARTHAM in 4CS HOLDINGS. BANK AUSTRIA argues that this interest, removed by one degree of separation from the DEBTOR, is sufficient to render KARTHAM the holder of an "interest" in the DEBTOR. The DEBTOR argues for a narrow interpretation of the term, asserting that 4CS HOLDINGS, as the DEBTOR'S sole shareholder, is the only holder of an "interest" in the DEBTOR.

The issue appears to be one of first impression.

■ The meaning of the term "interest" is a question of federal law. Undefined by the Bankruptcy Code, "interest" is generally used to distinguish equity from debt. Creditors hold claims against the debtor while equity owners hold interests in the debtor. *See*, 11 U.S.C. § 501(a). The term "interest" means equity interest. *Wabash Valley Power*, 72 F.3d at 1313. In most instances, the holders of an interest in a corporation for purposes of the absolute priority rule will be the shareholders of that corporation. In certain cases, such as this, however, where the shareholder of record is a holding company, it is both necessary and appropriate to look beyond the mere identity of the holder of the debtor's stock.[2] In this Court's view, this is necessary to fully effectuate the policy against allowing insiders to use the advantage of their insider status to acquire new equity for less than fair value.[3]

The two primary characteristics of an equity interest are control and pecuniary benefit. The Supreme Court has recognized that the power to control a corporation, through its board of directors, that a majority shareholder has, is a separate property interest, distinct from the value

---

**2.** An expansive interpretation of the term "interest" is consistent with the very broad interpretation given to the companion term "claim." *See, Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). A liberal interpretation is also consistent with the origins of the absolute priority rule as a common law rule of equity intended to preserve the primacy of debt over equity as a matter of fairness to creditors. *See Louisville Trust Co. v. Louisville, N.A. & C. Ry. Co.*, 174 U.S. 674, 19 S.Ct. 827, 43 L.Ed. 1130 (1899); *Northern Pac. R. Co. v. Boyd*, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913); *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). Moreover, since "equity security holder," a defined term at Section 101(17) of the Bankruptcy Code meaning a "holder of an equity security of the debtor," is not used in Section 1129(b)(2)(B)(ii), that provision, on its face, is not limited to holders of the equity securities of the debtor.

**3.** As defined in Section 101(31)(B) of the Bankruptcy Code, KARTHAM is an insider of the DEBTOR for three alternative reasons: as a director of the DEBTOR, as an officer of the DEBTOR, and as a person in control of the DEBTOR.

of the shares themselves. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). But more than the power to control is necessary. As the Seventh Circuit has recognized, it is control plus the right to share in profits that characterizes an equity interest, with the right to share in profits being the indispensable element:

> In the ordinary commercial context, the prerogatives of equity ownership include not only the right to control corporate decision making but also the right to a share in profits and in the ownership of corporate assets on dissolution. When associated with an equity interest in a business corporation, control contributes to value—hence the premium investors are willing to pay for a controlling interest in a business corporation. Indeed, as recognized by the Supreme Court in *Ahlers*, control of a profit-making entity in which one holds an equity interest is valuable even "where debts far exceed the current value of assets" because of "the interest in potential future profits of a now-insolvent business." 485 U.S. at 208, 108 S.Ct. at 969 (dismissing the "no value" argument made by the debtor). Control is not essential to an equity interest, as the existence of non-voting stock demonstrates. A share of profits, however, is essential. Control alone, di-

vorced from any right to share in corporate profits or assets, does not amount to an equity interest.

*Wabash Valley Power*, 72 F.3d at 1318. The Seventh Circuit went on to hold that the Wabash plan did not violate the absolute priority rule even though the members in control of the non-profit debtor retained that control under the plan, since the members had no opportunity to obtain profits or any equity in Wabash's assets. *Id.* at 1320.

KARTHAM, as majority shareholder of 4CS HOLDINGS, has exercised and continues to exercise control over the DEBTOR through his ability to control the DEBTOR'S board of directors, albeit derivatively through his control of 4CS HOLDINGS. More importantly, he also has had and continues to have the right to share in the DEBTOR'S profits, even though those economic rights flow to him through the holding company.[4] Through his interest in the holding company, both elements that define an equity interest, control and the right to share in profits, exist between KARTHAM and the DEBTOR. Applying the Seventh Circuit's reasoning in *Wabash*, this Court finds that KARTHAM must be considered the holder of an "interest" in the DEBTOR for purposes of the absolute priority rule.[5]

---

4. The fact that the DEBTOR is insolvent and has not turned a profit in recent years is irrelevant. It is the right to share in profits, if any, that is material.

5. *Cf., Brown v. Tenney*, 125 Ill.2d 348, 126 Ill.Dec. 545, 532 N.E.2d 230 (1988), where the Illinois Supreme Court discussed the nature of a holding company:

> A holding company is a corporate body with a concentrated ownership of shares of stock in another company, by which it exercises control, supervision or influence over the policies and management of the company whose shares it holds. (*See North American Co. v. Securities & Exchange Comm'n*

(1946), 327 U.S. 686, 701, 66 S.Ct. 785, 794, 90 L.Ed. 945, 956.) It has been noted that "[t]he holding company has given rise to numerous new problems of the protection of stockholders from the misconduct of their directors." (Note, *Remedies of Stockholder of Parent Corporation for Injuries to Subsidiaries*, 50 Harv.L.Rev. 963 (1937).) A shareholder in a holding company cannot maintain a classic single derivative action against the subsidiary because he or she will not, technically, meet the threshold share-ownership requirement to bring a derivative action against the subsidiary. This is because a single derivative action on behalf of the subsidiary may only be main-

■ Having determined that KART-HAM is old equity, it now must be considered whether, under the PLAN, KARTHAM is receiving or retaining any property on account of his prior interest. The Supreme Court recognizes that exclusivity is problematic, both with respect to the "property" issue and the "on account of" issue. Finding that the exclusive opportunity to obtain new equity is a form of property, the Supreme Court held that a plan that vests the opportunity to acquire equity in the reorganized debtor exclusively in those who owned and controlled the debtor on the petition date, violates the absolute priority rule.

Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here. It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

*203 North LaSalle,* 119 S.Ct. at 1424. Because the PLAN gives KARTHAM the exclusive right to acquire the stock of the reorganized DEBTOR, KARTHAM is re-

taining or receiving "property" under the PLAN.[6]

■ Neither is there any doubt that the PLAN'S issuance of new shares to KARTHAM is "on account of" his prior interest. A causal relationship between holding the prior interest and receiving or retaining property is what activates the absolute priority rule. *203 North LaSalle,* 119 S.Ct. at 1420. The question of causation is one of degree. Without deciding the exact line of demarcation, the Supreme Court posited that causation between the old equity's holdings and subsequent property substantial enough to disqualify a plan presumably occurs whenever old equity obtains such property at a price that fails to provide the greatest possible advantage to the bankruptcy estate, and it would always come at a price too low when the equity holders obtained or preserved an ownership interest for less than someone else would have paid. *203 North LaSalle,* 119 S.Ct. at 1421.

■ While not deciding whether a new value corollary to the absolute priority rule continues to exist and, if so, its parameters, the Supreme Court held that, by itself, a plan provision that provides old equity with the exclusive opportunity to

tained by a shareholder of record of the subsidiary—here, the holding company. A shareholder of record in the holding company would, therefore, as defendants conceded at oral argument before this court, be without remedy, even where, as here, the holding company is the wrongdoer. The additional layer in the corporate structure would prevent the righting of many wrongs and would insulate the wrongdoer from judicial intervention (citation omitted). The law, however, cannot be deceived by specious and illusory devices, disguises or circuity of action (citation omitted).

To prevent this from occurring, and falling victim to the alluring and disingenuous argument that a shareholder in a holding company has no interest in the subsidiary,

courts have fashioned a remedy from the single derivative cloth—the double derivative suit.

Concluding that the holding company was being used as a shield, the court stated that the "real owner of the subsidiary is not the holding company but rather the holding company's shareholders."

6. It is of no benefit to the DEBTOR'S position that the old shares are being cancelled and KARTHAM is receiving newly issued shares. Section 1129(b)(2)(B)(ii) forbids both retention and receipt of property on account of the prior interest. *203 North LaSalle,* 119 S.Ct. at 1419–20.

**600**

acquire the new equity satisfies the causation element.

Given that the opportunity is property of some value, the question arises why old equity alone should obtain it, not to mention at no cost whatever. The closest thing to an answer favorable to the Debtor is that the old equity partners would be given the opportunity in the expectation that in taking advantage of it they would add the stated purchase price to the estate. See Brief for Respondent 40–41. But this just begs the question why the opportunity should be exclusive to the old equity holders. If the price to be paid for the equity interest is the best obtainable, old equity does not need the protection of exclusiveness (unless to trump an equal offer from someone else); if it is not the best, there is no apparent reason for giving old equity a bargain. There is no reason, that is, unless the very purpose of the whole transaction is, at least in part, to do old equity a favor. And that, of course, is to say that old equity would obtain its opportunity, and the resulting benefit, because of old equity's prior interest within the meaning of subsection (b)(2)(B)(ii). Hence it is that the exclusiveness of the opportunity, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, renders the partners' right a property interest extended "on account of" the old equity position and therefore subject to an unpaid senior creditor class's objection.

*203 North LaSalle,* 119 S.Ct. at 1422–23. Here, where KARTHAM has the exclusive opportunity to obtain one hundred percent of the reorganized DEBTOR'S shares for no contribution of money or money's worth, the causal relationship between his prior interest and his receipt of the new shares is presumptive.[7]

So it is that the PLAN violates Section 1129(b)(2)(B)(ii) and is not confirmable. KARTHAM'S acquisition of the new shares without market exposure or an opportunity for any other interested party to outbid him is the PLAN'S fatal flaw.[8] It is only as a point of emphasis that the Court notes that his proposed acquisition of the shares for no new value is the most extreme example of an absolute priority rule violation, since the purpose of the rule is to ensure that the DEBTOR obtains top dollar for the new equity interest. Accordingly, for these reasons, the Court determines that the PLAN violates the absolute priority rule and may not be confirmed.

■ The PLAN is not confirmable for an additional reason. The "fair and equitable" requirement of Section 1129(b)(1) is a general principle that includes, but is not limited to, the specific requirements of Section 1129(b)(2). Even if KARTHAM was not a prior interest holder, the PLAN'S proposal to give him the newly issued common stock of the reorganized debtor for no consideration is unfair and inequitable to unsecured creditors who are not being paid in full. *See, In re Johnson's Estate,* 339 Ill.App. 110, 88 N.E.2d

7. Causation is all the more obvious when one also considers that not only does the PLAN give a gift to KARTHAM of all of the DEBTOR'S newly issued shares, it also purports to cancel the shares held by 4CS HOLDINGS and to dissolve that non-debtor entity. Without the consent of BANK AUSTRIA, and with no apparent agreement by the other minority shareholders, this bold stroke is made feasible only by KARTHAM'S controlling interest in 4CS HOLDINGS.

8. Old equity is not precluded as a matter of law from obtaining a new equity interest. If KARTHAM acquires the new shares for fair value after reasonable market exposure, the absolute priority rule hurdle may be cleared.

886 (Ill.App. 1 Dist.1949) (corporation's issuance of its stock for less than fair consideration violative of public policy). *See, also, Kham & Nate's Shoes*, 908 F.2d at 1362 (Illinois law requires consideration for shares to be money, property or labor or services actually performed; bankruptcy court may not approve the issuance of shares, over creditor's objection, where consideration is inadequate under state law). In light of the Court's denial of confirmation of the PLAN for the foregoing reasons, it is not necessary and the Court declines to address the various other arguments propounded by BANK AUSTRIA opposing confirmation of the PLAN.[9]

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS ORDERED that Confirmation of the Plan of Reorganization filed by the DEBTOR, 4 C SOLUTIONS, INC., should be and hereby is DENIED. The Clerk shall schedule a telephonic status hearing.

---

**9.** As BANK AUSTRIA points out, the PLAN has several other obvious deficiencies, including that it arbitrarily establishes BANK AUSTRIA'S secured claim at $1.0 million and disallows its unsecured claim, and it improperly provides for the release of claims against non-debtors.